WATERTOWN THERMOMETER COMPANY, RESPONDENT, *v.* JULIA A. POOL, HERBERT W. POOL AND JOHN L. POOL, APPELLANTS.

*When a restriction upon the right of a vendor to engage in the manufacture of certain articles which he has sold, together with the trade-mark, to another person, will not be held to be void, as in restraint of trade, because it extends over the whole of the United States.*

In an action brought to recover damages for a violation of an agreement made by the defendants not to engage in the manufacture of thermometers, etc., it was alleged in the complaint that the plaintiff was a corporation engaged in the manufacture and sale of thermometers and storm glasses, with its principal place of manufacture at Watertown, N. Y.; that, on August 26, 1887, the defendant Julia A. Pool, in consideration of $5,000, by an agreement in writing and under seal, sold to two persons therein named 100 shares of stock of the plaintiff corporation, and assigned to them the trade-mark used on thermometers and storm glasses manufactured by her; authorized the transfer of such trade-mark to the plaintiff; and also agreed "not to engage in the manufacture of any thermometers of any kind or description, nor of any storm glasses, at any place within the

United States, at any time within a period of ten years from the date" thereof; and that, for the same consideration, the defendant Herbert W. Pool agreed that he would not, in any manner whatever, engage in the manufacture of thermometers of any kind, nor of storm glasses, within the said period of ten years. It also alleged that, before the commencement of this action, the said assignees transferred to the plaintiff all the rights secured by the said agreement; that plaintiff's business, in the manufacture and sale of thermometers and storm glasses, required for its full and proper development the entire territory embraced under such agreement and a considerable period of time; that the purchase of such stock of the defendant Julia, which was done at the request of the defendant Herbert, was made and said stock was paid for by the stockholders of the plaintiff, in consideration of the full development of such business within the United States for the period of ten years, without any hindrance, obstruction or interference on the part of the defendants Julia or Herbert, or either of them, as provided under such agreement. It also alleged that the defendants were conducting the business of manufacturing and selling thermometers and storm glasses at Oswego, N. Y., under the name of the Oswego Thermometer Works, and that the defendants Julia and Herbert had enticed a number of the plaintiff's employees to leave its employment to its injury and damage, and that the plaintiff, before this action was commenced, requested them to desist from the further manufacturing of thermometers and storm glasses, and they refused to do so.

The only question raised by the appellants was as to the validity of the contract upon which the action was based, they contending that it was in general restriction of trade and consequently void, this claim being founded not on the time but on the territory to which such restriction extended.

Upon an appeal from an interlocutory judgment overruling the defendant's demurrer to the complaint:

*Held,* that a restriction which is no greater than the interest of the vendee requires, and by giving which the vendor has obtained an increased price for what he has sold, is valid, though it extends throughout the whole country or kingdom.

Cases bearing upon this question collated and considered by MARTIN, J.

That as, in this case, the defendants by their demurrer admitted all the allegations of the complaint, it was clear that the restraint, though general, was at the same time co-extensive, only, with the interest to be protected and the benefit meant to be conferred by the agreement; that it imposed no restriction upon the defendants which was not beneficial to the plaintiff, or which was unnecessary for its reasonable protection, and that it was induced by a consideration which made it reasonable for the parties to enter into it; that the interlocutory judgment should be affirmed, with costs.

APPEAL from an interlocutory judgment, entered in the Jefferson county clerk's office June 19, 1888, upon an order overruling a demurrer to the complaint, with the privilege to answer within twenty days, upon payment of forty dollars and forty-nine cents costs.

*Nutting & Nutting*, for the appellants.

*Hannibal Smith*, for the respondent.

MARTIN, J.:

This is an appeal from an interlocutory judgment overruling the defendants' demurrer to the complaint herein. The demurrer was upon the ground that the complaint does not state facts sufficient to constitute a cause of action. By demurring to the complaint the defendants admit that the plaintiff is a domestic corporation engaged in the manufacture and sale of thermometers and storm glasses, with its principal place of manufacture at Watertown, N. Y.; that on August 26, 1887, the defendant Julia A. Pool, in consideration of $5,000, by an agreement in writing and under seal, sold to Osee W. Wilmot and Byron B. Taggart 100 shares of the stock of the plaintiff corporation, and assigned to them the trade-mark used on thermometers and storm glasses manufactured by her, authorized the transfer of such trade-mark to the plaintiff, and also agreed " not to engage in the manufacture of any thermometers of any kind or description, nor of any storm-glasses, at any place within the United States, at any time within a period of ten years from the date hereof ; " that, for the same consideration, the defendant Herbert W. Pool agreed that he would not, either as principal or agent, in any manner whatever, engage in the manufacture of thermometers of any kind, nor of storm glasses, within said period of ten years; that, before the commencement of this action, Wilmot and Taggart transferred to the plaintiff all the rights secured by said agreement; that plaintiff's business in the manufacture and sale of thermometers and storm glasses requires, for its full and proper development, the entire territory embraced in such agreement, and a considerable period of time; that the purchase of such stock of the defendant Julia, at the request of the defendant Herbert, was made and paid for by the stockholders of the plaintiff in consideration of the full development of such business within the United States for a period of ten years, without any hindrance, obstruction or interference on the part of the defendants Julia and Herbert, or either of them, as provided in such agreement; that the defendants are conducting the business of manufacturing and selling thermometers and storm glasses at Oswego, N. Y., under the name of the Oswego Ther-

mometer Works; that the defendant Julia has furnished the capital and the defendant Herbert has control and management of the business; that the name of the defendant John L. Pool is used as a pretense and cover to enable the defendants Julia and Herbert to violate their said agreement, and to conduct such business in violation thereof; that the defendants Julia and Herbert have induced a number of plaintiff's employees to leave its employment, to its injury and damage; that the plaintiff, before this action was commenced, requested the defendants to desist from the further manufacture and sale of thermometers and storm glasses, which they refused, and still refuse to do; that, by reason of the violation of such agreement, the plaintiff has sustained $5,000 damages.

The only question raised by the appellants is as to the validity of the contract upon which this action is based. They contend that it is in general restriction of trade, and, consequently, void. This claim is not founded on the time, but on the territory to which such restriction extends. The decision at Special Term was based on the case of the *Diamond Match Company* v. *Roeber* (106 N. Y., 473). The appellants now contend that that case is not an authority for holding that the contract under which this action was brought was valid. They insist that it is clearly distinguishable from this, as in that case the restriction was limited, while in this it is general. The two cases are somewhat different. In the Match Company case, of the whole United States and territories, the State of Nevada and Territory of Montana were excepted from the operation of the agreement, while in the case at bar the agreement includes the whole United States. We think it must be admitted that the precise question involved in this case was not directly decided in the case referred to.

But the question here involved was quite thoroughly discussed, and the authorities bearing upon it fully reviewed in the opinion delivered by the court in that case. Judge ANDREWS, who delivered the opinion, says: "The tendency of recent adjudications is marked in the direction of relaxing the rigor of the doctrine that all contracts in general restraint of trade are void, irrespective of special circumstances. Indeed, it has of late been denied that a hard and fast rule of that kind has ever been the law of England. (*Rousillon* v. *Rousillon*, L. R., 14 Ch. Div., 351.)  *  *  *  When the restraint is general,

but at the same time is co-extensive only with the interest to be protected, and with the benefit meant to be conferred, there seems to be no good reason why, as between the parties, the contract is not as reasonable as when the interest is partial and there is a corresponding partial restraint. And is there any real public interest which necessarily condemns the one and not the other? It is an encouragement to industry and to enterprise in building up a trade, that a man should be allowed to sell the good will of the business and the fruits of his industry upon the best terms he can obtain. If his business extends over a continent, does public policy forbid his accompanying the sale with a stipulation for restraint co-extensive with the business which he sells? If such a contract is permitted, is the seller any more likely to become a burden on the public than a man who having built up a local trade only, sells it, binding himself not to carry it on in the locality? Are the opportunities for employment and for the exercise of useful talents so shut up and hemmed in that the public is likely to lose a useful member of society in the one case and not in the other? Indeed, what public policy requires is often a vague and difficult inquiry. It is clear that public policy and the interests of society favor the utmost freedom of contract, within the law, and require that business transactions should not be trammeled by unnecessary restriction." * * *

"It has sometimes been suggested that the doctrine that contracts in general restraint of trade are void, is founded in part upon the policy of preventing monopolies, which are opposed to the liberty of the subject, and the granting of which by the king under claim of royal prerogative led to the conflicts memorable in English history. But covenants of the character of the one now in question operate simply to prevent the covenantor from engaging in the business which he sells so as to protect the purchaser in the enjoyment of what he has purchased. To the extent that the contract prevents the vendor from carrying on the particular trade, it deprives the community of any benefit it might derive from his entering into competition. But the business is open to all others, and there is little danger that the public will suffer harm from lack of persons to engage in a profitable industry. Such contracts do not create monopolies. They confer no special or exclusive privilege. If

contracts in general restraint of trade, where the trade is general, are void as tending to monopolies, contracts in partial restraint where the trade is local, are subject to the same objection, because they deprive the local community of the services of the covenantor in the particular trade or calling, and prevent his becoming a competitor with the covenantee. We are not aware of any rule of law which makes the motive of the covenantee the test of the validity of such a contract. On the contrary, we suppose a party may legally purchase the trade and business of another for the very purpose of preventing competition, and the validity of the contract, if supported by a consideration, will depend upon its reasonableness as between the parties."

It seems to us that the reasoning of the learned judge in that case fully covers the question under consideration, and is so satisfactory that we feel justified in adopting it in this case; moreover, it seems to be sustained by the cases cited in the opinion. ( *Whittaker* v. *Howe*, 3 Beav., 383; *Jones* v. *Lees*, 1 Hurl. & N., 189; *Rousillon* v. *Rousillon*, L. R., 14 Ch. Div., 351; *Leather Cloth Co.* v. *Lorsont*, L. R., 9 Eq., 345; *Morse Twist Drill Co.* v. *Morse*, 103 Mass., 73; *The Printing and Numerical Registering Co.* v. *Sampson*, L. R., 19 Eq., 462; *Ainsworth* v. *Bentley*, 14 Weekly R., 630; *Stiff* v. *Cassell*, 2 Jur. [N. S.], 348; *Ingram* v. *Stiff*, 5 Jur. [N. S.], 947; *Hodge* v. *Sloan*, 107 N. Y., 248; *Leslie* v. *Lorillard*, 110 N. Y., 533.)

In *Jones* v. *Lees* it was held that a covenant not to sell slubbing and roving frames not fitted with plaintiff's invention during the continuance of the defendant's license from the plaintiff to use and sell the patented inventions was valid, although it extended to all England. In the Leather Cloth Company case it was held that a contract not to manufacture or sell patent leather cloth in any part of Europe was not invalid as against public policy. In *The Printing and Numerical Registering Company* v. *Sampson* an agreement by the vendor of a patent to assign all after acquired patent-rights of like nature obtained during his lifetime in all Europe was held good. In the Rousillon case a contract not to engage in the sale of champagne, without limit as to space, was enforced. In *Whittaker* v. *Howe* a contract made by a solicitor not to practice in any part of Great Britain was upheld. In the Morse Twist Drill Company

case an agreement by a vendor of certain patents and machinery to transfer all improvements in the business and manufacture, and that he would at no time assist, aid or encourage any competition against the business, was held valid.

In *Ainsworth* v. *Bentley* the plaintiff purchased an established magazine. The defendant agreed not to publish another of like nature. The defendant arranged to publish one that came within the restriction. It was claimed that the agreement was void as being in restraint of trade and unlimited, but an injunction was granted against violating the contract. In *Stiff* v. *Cassell* the defendant agreed to write two tales for a paper, and that he would write for no other which should be sold for less than a certain price, for the space of one year. The restriction was held valid, although there was no limitation as to space. In *Ingram* v. *Stiff* a periodical was sold with an agreement by the vendor not to publish, alone or in partnership, any other periodical similar to it. This agreement was held valid. In *Hodge* v. *Sloan* it is said, "Assuming, with the respondent, that the covenant is in restraint of trade, it is still valid if it imposes no restriction upon one party which is not beneficial to the other, and was induced by a consideration which made it reasonable for the parties to enter into it or, in other words, if it was a proper and useful contract, or such as could not be disregarded without injury to a fair contractor."

The cases cited seem to sustain the doctrine that a restriction which is no greater than the interest of the vendee requires, and by giving which the vendor has obtained an increased price for what he sold, is valid, though it extended through the whole kingdom or country. In this case the defendants, by their demurrer, admit that the business of the plaintiff in the manufacture and sale of thermometers and storm glasses required for its full and proper development the entire territory embraced within the United States, and that one of the considerations that induced the plaintiff to make such purchase and pay the consideration named was such restriction, which would enable it to fully develop its business throughout the whole United States, without interference on the part of the defendant. Assuming this, as we must, and it seems quite clear that the restraint, though general, is at the same time co-extensive only with the interest to be protected, and with the benefit meant to be con-

ferred by this agreement; that it imposes no restriction upon the defendants which is not beneficial to the plaintiff, or which was unnecessary for its reasonable protection; and that it was induced by a consideration which made it reasonable for the parties to enter into it.

We are of the opinion that upon the facts and under the circumstances alleged in the complaint, and admitted by the demurrer, the contract in question should be held valid, and that the Special Term properly overruled the defendant's demurrer.

Interlocutory judgment affirmed with costs, but with leave to the defendants within twenty days from the service of a copy of the judgment of affirmance herein, on the payment of the costs of this appeal and the costs included in the judgment appealed from, to make and serve an answer to the complaint herein.

FOLLETT, J., concurred; KENNEDY, J., not sitting.

So ordered.