### UNDERWOOD *v.* SMITH.

*(Common Pleas of New York City and County, General Term. June 6, 1892.)*

CONTRACTS IN RESTRAINT OF TRADE—WHEN VALID.

Where defendant sold to plaintiff his typewriting supply business, and agreed that for 15 years he would not, "either in his own name or otherwise, directly or indirectly, engage in, or aid or instigate others to enter upon or be interested in, any business of like nature to that herein by him sold to" plaintiff, the contract is not void as in restraint of trade.

Appeal from special term.

Action by John T. Underwood against Stephen T. Smith. From a judgment granting an injunction *pendente lite*, defendant appeals. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR, JJ.

*Esselstyn, Ketchum & Safford,* for appellant. *Charles Strauss,* for respondent.

BOOKSTAVER, J. From the papers it appears that about August 1, 1888, the defendant entered into an agreement with the plaintiff and Frederick W. Underwood, then composing the firm of John Underwood & Co., whereby, for the sum of $25,000, he sold to the plaintiff and Frederick W. Underwood his typewriting supply business, then carried on at 14 Park place, in this city, with all the stock in trade, machinery, tools, fixtures, and plant, and all receipts and formulæ used in the business and known to defendant; also the good will of the business, trade-marks, labels, patents, and applications for patents, excepting only a trade-mark for linen paper. This large consideration was paid, and the principal inducement to the purchase was, as stated in the agreement itself, because the appellant had "declared his intention to henceforth devote his entire time and attention to other pursuits, and not to re-enter said business, or any business analogous thereto, or any of the branches thereof," and agreed "that, for and during the period of fifteen years from and after the date hereof, he will not, either in his own name or otherwise, directly or indirectly, engage in, or aid or instigate others to enter upon or be interested in, any business of like nature to that herein by him sold to the said party of the second part." The plaintiff has become the successor to all the rights and interests of himself and Frederick W. Underwood under this agreement. After it was made, and in the year 1891, the defend-

ant entered the employment of the Hammond Typewriter Company, which was engaged in the manufacture of its own typewriting supplies, ribbons, carbons, etc., such as defendant had made when carrying on the business. which he had sold to the plaintiff, and such as plaintiff was then making; and he claims that these ribbons, at least, were made by and under the direction of the defendant. Thereupon this action was commenced to obtain a judgment of this court, among other things, to restrain the defendant from doing any of those things which would be a violation of his covenant. A preliminary injunction and order to show cause were obtained, and after a hearing at special term the injunction was continued *pendente lite.*

The appellant contends that the covenant was too broad and general, and hence void as in restraint of trade. This question has recently received much consideration in the courts of this state, and the old rule in regard to it has been greatly modified. The first of these cases is *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473, 13 N. E. Rep. 419. There the covenant was that the defendant should not engage in the manufacture or sale of friction matches within the United States, except Nevada and Montana, for a period of 99 years, and at the time of entering into the contract the defendant executed a bond in the penalty of $15,000, to pay that sum as liquidated damages in case of a breach, and the court held that the restraint was partial, and the covenant valid, and that the equitable jurisdiction of the court to enforce the covenant was not impaired by the fact that the damages for a breach had been fixed in the bond. In this case the time limited was much shorter than in that, while the exception of two thinly-populated and remote districts scarcely sufficed to make any limitation as to place. Yet the court refused to hold that the exception was colorable merely, evidently on account of its reluctance to hold the contract void as being against public policy. Indeed, from the reasoning in that case, it would seem that while the early doctrine of the common law, that contracts in general restraint of trade are void, without regard to circumstances, has not been fully abrogated, it has been much weakened and modified. In the course of the opinion, Judge ANDREWS said: "It has sometimes been suggested that the doctrine that contracts in general restraint of trade are void is founded in part upon the policy of preventing monopolies, which are opposed to the liberty of the subject, and the granting of which by the king under a claim of royal prerogative led to conflicts memorable in English history. But covenants of the character of the one now in question operate simply to prevent the covenantor from engaging in the business which he sells, so as to protect the purchaser in the enjoyment of what he has purchased. * * * Such contracts do not create monopolies. They confer no especial or exclusive privileges." And this may be said with great justice of the case at bar, because it simply provided that the defendant himself should not enter into this business; he having another business to follow, and there being many others engaged in the same business. This case is cited and approved in *Hodge* v. *Sloan,* 107 N. Y. 244, 17 N. E. Rep. 335, and *Leslie* v. *Lorillard,* 110 N. Y. 519, 18 N. E. Rep. 363. In the latter case the Old Dominion Steamship Company bought off a rival and competing company, paid it to cease running,—cease competing,—and the agreement was held good; the court, by Judge GRAY, saying: "Under the authority of that case, [*Diamond Match Co.* v. *Roeber,*] it may be said that no contracts are void as being in general restraint of trade where they operate simply to prevent a party from engaging or competing in the same business. * * * Under the doctrine of that case, it is difficult to see how the contracts which are complained of here are open to the objection suggested by counsel, regarded only in the light of what they intended to effect. These contracts removed a business rival whose competition may have been deemed dangerous to the success or maintenance of the business of the Old Dominion Company. They could not, of course, exclude all competition in the business, but would in that

particular case." And this applies directly to the case now under consideration, where the controlling fact for paying the large price which was paid for the business then carried on by the defendant was his declaration of intention to go out of that business, and not again to engage in it as a rival or otherwise. *Tode* v. *Gross*, 127 N. Y. 480, 28 N. E. Rep. 469, was very similar to the case under consideration, in many respects. The defendant was the owner of a cheese factory, and was engaged in manufacturing several varieties of cheese by a secret process, known only to her and her agents, and entered into an agreement with the plaintiffs to sell them her factory and its buildings, together with the good will, custom, trade marks and names used in and belonging to said business. She also covenanted to communicate to them the secret of the manufacture, and that she and her agents would refrain from communicating said secret to any one else, and after a certain date refrain from making or manufacturing or vending said cheese, and from using the trade marks or name under a penalty of $5,000, which was named as stipulated damages to be paid by the defendant in case of a violation of the covenant within five years. Subsequent to the date on which defendant agreed to refrain from manufacturing and selling, and within five years from the date of the contract, two of her agents sold cheese having the same name, and substantially the same trade-marks, as that sold by defendant to plaintiff, which was not manufactured by them, but was a product similar to that formerly so manufactured. In the action for an alleged breach of the covenant, it was held that it was not opposed to public policy, as in restraint of trade, that it was not confined to defendant's personal acts, but covered as well those of her agents, and that as the actual damages for a breach of the covenant would be wholly uncertain, and incapable of being ascertained except by conjecture, it was the intent of the parties to liquidate them when they named $5,000 as stipulated damages, and plaintiffs were entitled to recover that amount. In the *Diamond Match Co. Case* the period of time was limited to 99 years, and it was held that that was not in restraint of trade. In this case it was limited to 15 years. In *Tode* v. *Gross* the covenant was held good, although there was no limit as to place, and five years' limit as to time. Under these cases, therefore, we think the order granted at special term was proper. The defendant sold his stock in trade, his formulæ, his trade secrets, trade-marks, patents, and good will of the business, with certain exceptions, to the plaintiff. To make them of full value to him, it was necessary that he should wholly retire from that branch of the business, and refrain from engaging in it, either on his own account or for others. He was paid for his special knowledge and facilities for doing a particular business, and for the custom which that knowledge and those facilities brought. To enable the plaintiff to obtain the full benefit of what he bought and paid for, defendant agreed not to become plaintiff's rival for a term of 15 years; and both parties understood that that was not only a necessary, but the controlling, part of the entire agreement, without which the agreement would not have been made, and on the faith of which the plaintiff paid his $25,000. The time during which the defendant was to refrain from pursuing the business of manufacturing and selling typewriting supplies was limited to a period of 15 years, although there was no limitation in the covenant as to the place. But it is to be observed that the defendant did not sell out his entire business, or covenant not to pursue the business retained by him. It was limited to the manufacture and sale of typewriting supplies only. In *Navigation Co.* v. *Winsor*, 20 Wall. 64, Mr. Justice BRADLEY, in discussing an agreement in general restraint of trade, rests this doctrine on two principal grounds: "One is, the injury to the public by being deprived of the restricted party's industry; the other is the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and family." Now, this agreement is not open to either of these objections; for by it defendant re-

served to himself a business which he could pursue, and the public were therefore not deprived of his industry, and neither was he precluded from supporting himself and his family, as he could have still pursued the branch of the business which he reserved to himself. The rule of law in regard to general restraint of trade originated in England at a time when mechanics and tradesmen did not receive such general education as they do now, and when what they received was largely limited to a particular business or occupation, so that, when a mechanic or tradesman agreed to give up his business, he was in danger of becoming a public charge, inasmuch as it was difficult for him to obtain work in other trades or occupations. This is far from being the case in this country, where education is so general, and where it is possible for a man of ordinary intelligence to know more or less about several occupations, and be fitted to carry on either of them. Order appealed from affirmed, with costs. All concur.