90   429
35ap415

</div>

---

UNITED STATES CORDAGE COMPANY, Respondent, *v.* WILLIAM WALL'S SON'S ROPE COMPANY, FRANK T. WALL, EDWIN R. BRINKERHOFF and WILLIAM F. WALL, Appellants.

*Contract — a covenant not to engage in the same business, valid.*

A covenant not to engage in the same business, made by a vendor in connection with a sale of his business and its good will, is valid and enforcible.

In an action brought to restrain the defendants from using or displaying the names of "William Wall's Sons," or "William Wall's Sons Rope Company," it appeared that before July 15, 1887, William Wall's Sons had established a reputation as manufacturers of cordage, and that about that day with three other similar firms it established the National Cordage Company, to which company the firms leased their plants, and arranged to take back sub-leases thereof, and in consideration of so doing, caused the whole capital stock of the cordage company to be issued to themselves; of this company Frank T. Wall, the active partner of William Wall's Sons, became a director and vice-president.

In August, 1890, a plan was devised to issue a large amount of preferred stock, and to divide a still larger amount of common stock among the owners, based upon the alleged necessity of purchasing the fees of the leased property, and of

procuring assignments from the several owners of the good will of their business, and also covenants not to engage in the cordage business except for the National Cordage Company; and, in accordance with this scheme, the directors appointed a committee on August 25, 1890, of which Frank T. Wall was a member, and which made a report in favor of the project, which was duly adopted, and the design was carried out, William Wall's Sons being paid a large sum in cash and preferred stock, while the common stock was turned over to the stockholders.

It also appeared that on August 21, 1890, Frank T. Wall, on behalf of his firm, had executed an agreement which recited that William Wall's Sons were about to convey to the National Cordage Company their mill property, etc., "together with the good will of the said business of said parties of the first part, and the exclusive right of the use of their name therein, and the exclusive right to all of their trade marks and labels as heretofore owned by them, for use or, in fact, used in connection with said business;" but that no formal transfer was in fact executed by William Wall's Sons in accordance with the resolution or the agreement although they accepted the consideration. This agreement further provided that "the said William Wall's Sons would not engage in the manufacture or sale of cordage within the limits of the United States except as an employee of the National Cordage Company."

It further appeared that in May, 1893, the National Cordage Company passed into the hands of receivers, who obtained from the firm of William Wall's Sons a deed of the real estate on which their mill was situated; that there was a reorganization, resulting in a new corporation called the United States Cordage Company, to which was transferred all the property and property rights of the National Cordage Company, including the good will of the business of William Wall's Sons, and the right to use the firm name.

Frank T. Wall and certain others subsequently undertook to use the name of William Wall's Sons, organized a corporation known as William Wall's Sons Rope Company, opened an office in New York city and sent out circulars to their old customers soliciting business.

*Held,* that under the agreement of August 21, 1890, Frank T. Wall had bound himself not to engage in the manufacture or sale of cordage within the limits of the United States except as an employee of the National Cordage Company; that such a covenant was valid and enforcible and entitled the United States Cordage Company to an injunction;

That, independently of this agreement, the other proceedings by resolution of the board of directors, resulting in the purchase of the fees and good will and the procuring of covenants upon the part of the former part owners of cordage works not to engage in that business, the participation of Frank T. Wall in those matters, and the acceptance by his firm of the consideration offered and paid, imposed an obligation upon him and his partners not to engage in the cordage business except for the National Cordage Company.

It appeared that two of the persons enjoined were only nominal partners in the firm of William Wall's Sons as at present constituted, being merely executors of a deceased partner in the former firm.

*Held,* that as it did not appear that they had derived any benefit from the transaction between the present firm of William Wall's Sons and the National Cordage Company, the injunction should be modified in such a manner as not to apply to them.

APPEAL by the defendants, William Wall's Son's Rope Company and Frank T. Wall, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 3d day of July, 1895, granting an injunction *pendente lite.*

Also, an appeal by the defendants, Edwin R. Brinkerhoff and William F. Wall, from so much of said order as enjoins and restrains them from in any manner soliciting business from the customers formerly of William Wall's Sons.

*Adrian H. Joline,* for the appellants.

*John L. Cadwalader,* for the respondent.

PARKER, J.:

The order under review enjoins the defendants, during the pendency of this action, "from using or displaying the name William Wall's Sons, either separately or conjunctively with any other words, and from using the name ' William Wall Son's Rope Company,' or either of such names upon any signs, cards, bill heads or letter heads or otherwise, or from in any way holding themselves out as successors to the firm of William Wall's Sons, and from in any manner solicting business from the customers formerly of William Wall's Sons."

In support of the motion for an injunction *pendente lite* the plaintiff caused it to appear, by its motion papers, that prior to July 15, 1887, William Wall's Sons had established a reputation as manufacturers of cordage, and on or about that day such firm, with three other firms engaged in the same business, established the National Cordage Company, a New Jersey corporation, with a capital of $1,500,000, and caused leases of their several plants to be made to such company for ninety-nine years, and at the same time arranged to take back sub-leases for thirty-three years each, with two renewals of the several leased plants, and in consideration of these leases caused the entire capital stock to be issued to themselves.

After the execution of the leases the temporary directors resigned, and representatives of these four concerns became directors, and entered into the management of the joint business as they had before managed their separate businesses in concert, Frank T. Wall, the active partner of William Wall's Sons, becoming a director and vice-president. In August, 1890, the same individuals continuing in the management, a plan was devised to get out a large amount of preferred stock, and to divide a still larger amount of common stock among themselves.

The foundation for this issue of stock was the alleged necessity of the purchase by the company of the fees of the four properties which had been leased for ninety-nine years, and the procuring of assignments from the several owners of the mills of the good will of the business of the firms and corporations owning them, together with covenants not to engage in the cordage business except for the company. In pursuance of this scheme the directors, on August 25, 1890, appointed a committee, of which Frank T. Wall was a member, " to make a careful valuation of the assets of the company looking to an increase of the capital stock." The committee reported that the capital stock should be increased to the extent of $13,500,000, $5,000,000 of the stock to be preferred and $8,500,000 to be common stock. The preferred stock to be offered to the public for sale, the proceeds to be devoted to the acquisition of the fees of the four leased properties, and the company, as a part consideration for the proceeds of the preferred stock, to receive the assignments from the several owners " of the good will of their business, their trade marks and also covenants not to manufacture except at the instance and for the benefit of the National Cordage Company." The common stock to be divided among themselves as stockholders as representing undivided profits. Frank T. Wall, the active member of the firm of William Wall's Sons, offered the resolutions at the stockholders' meeting accepting the recommendations of the directors to devote the proceeds of the 50,000 shares of preferred stock to the purchase of the fees, together with an assignment of the good will of the respective businesses, trade marks and labels, with a covenant not to go into business except with the National Cordage Company.

The scheme was subsequently carried out so far as the company was concerned ; the preferred stock was offered to the public and

subscribed for, and the proceeds devoted in accordance with the recommendations of the directors and the resolutions of acceptance by the stockholders. The price paid to William Wall's Sons in cash and preferred stock was $970,579.40. The common stock, amounting to $8,500,000, was turned over to the stockholders. Prior to the passage of the resolutions by the directors and stockholders, to which we have referred, and on August twenty-first, Frank T. Wall, on behalf of his firm, executed an agreement which recited that William Wall's Sons were about to convey their mill property with the tools, etc., " together with the good will of the said business of said parties of the first part, and the exclusive right of the use of their name therein, and the exclusive right to all of their trade marks and labels as heretofore owned by them, for use or in fact used in connection with said business." After the adoption of the resolutions no formal transfer was executed by William Wall's Sons in accordance with the resolutions or otherwise although the consideration therefor was accepted by them.

In May, 1893, the National Cordage Company passed into the hands of receivers, who in due course demanded and obtained from the firm of William Wall's Sons a deed of the real estate on which the mill property was situated. Subsequently there was an organization of a new corporation bearing the name of the United States Cordage Company, and to it was transferred all of the property and property rights of the National Cordage Company, including the good will of the business of William Wall's Sons and the right to use the firm name. By this transfer the new corporation succeeded to all the property, property rights and interests of the original corporation, and acquired all of the benefits arising from and growing out of the contracts to which we have referred. Frank T. Wall, William F. Wall and Edwin R. Brinkerhoff, notwithstanding these facts, made preparations to engage in the business of manufacturing and selling cordage, and to facilitate the sale of the goods, undertook to make such use of the name William Wall's Sons, as would enable them to derive substantial benefit from the good will which had been established in that name. To that end they organized a corporation known as William Wall's Sons Rope Company, under the laws of the State of New Jersey. At their office on South street a large

sign bore the name of William Wall's Sons, and they made use of other signs to the same effect. Circulars were issued addressed to their old customers inviting custom, in which reference was made to the old firm of William Wall's Sons and signed William Wall's Sons Rope Company. From these facts it is apparent that there is no room to question so much of the order as enjoins the defendants during the pendency of this action from using in any manner whatever the name William Wall's Sons in connection with the manufacture and sale of cordage. The appellant Frank T. Wall, insisting that the only rights secured by the National Cordage Company were under and by virtue of the so-called agreement of August 21, 1890, urges that he is at liberty to engage in the cordage business under his own name, and to solicit custom of any person or persons whomsoever. By that agreement he claims that the good will of William Wall's Sons was transferred and nothing more, and that in the absence of an express statement to the contrary the vendor of a name and good will of a business may lawfully establish the same business, and invite all the world, including the old customers of the vendor, to come there and purchase of him, provided he does not lead any one to believe that the articles that he offers for sale are manufactured by the vendee, or that he is the successor to the business of the old firm, or that the vendee is not carrying on the business formerly carried on by the old firm. (*Marcus Ward & Co.* v. *Ward*, 40 N. Y. St. Repr. 792.)

But since the *Diamond Match Company Case* (106 N. Y. 473) it has been the law of the State that a covenant not to engage in business made by a vendor, in connection with a sale of his business and good will, is valid and enforcible.

The agreement of August twenty-first contains a covenant that the parties of the first part shall not directly or indirectly engage in the manufacture or sale of cordage and binding twine within the limits of the United States, except as an employee of the party of the second part, and except upon certain conditions precedent in the agreement specified, which it does not appear the parties have performed or attempted to perform.

And it seems a reasonable construction to place upon that agreement to hold that the covenant included Frank T. Wall, individually, as well as the firm of William Wall's Sons, of which he was

the only active member. But, independently of this agreement, which, as we have said, was executed prior to the recommendations of the board of directors and the stockholders to purchase the fees of the property and the good will, it would seem that the National Cordage Company became the owner of the property and good will of the business of William Wall's Sons, and they became bound not to engage in a similar business, except as employees of the company. The recommendation of the directors made pursuant to a report of a committee, of which Frank T. Wall was a member, was that the proceeds of the preferred stock should be devoted to procuring the fees of the properties and obtaining the good will of their business, trade marks and covenants not to engage in business except for the National Cordage Company. This recommendation of the directors was adopted by the stockholders by a resolution offered by Frank T. Wall. This proposition was accepted by the owners of the several properties, and they received therefor the full consideration.

The making of the propositions, their acceptance and the payment of the money, the parties apparently regarded as binding upon them without a formal written agreement, and so it was, if that was their understanding and intention. We discover nothing in the present record to lead us to think that it was not so intended, and that being the case, it would seem that Frank T. Wall bound himself not to engage in the cordage and binding twine business, except as an employee of the National Cordage Company. It was claimed upon the argument that it does not appear from the record that Brinkerhoff and William F. Wall bound themselves not to engage in the cordage business under their own names, nor from soliciting business from customers formerly of William Wall's Sons.

This position seems to us well founded. The eighth clause of the complaint alleges that, in the year 1888, the firm of William Wall's Sons was dissolved by the death of Michael W. Wall, and thereupon a new partnership was formed, consisting of Frank T. Wall and Eliza A. Wall as general partners, William F. Wall and Edwin R. Brinkerhoff as trustees under the last will and testament of Michael W. Wall, as nominal partners. It does not appear that either Brinkerhoff or William F. Wall derived the slightest benefit from the transactions between William Wall's Sons and the National Cordage Company, or that they had any connection what-

ever with the business other than as trustees under the will of Michael W. Wall. That being so, we can discover no ground upon which to base an injunction restraining them from engaging in the business under their own names, or from soliciting business from the customers of the old firm of William Wall's Sons.

The order should be modified by adding at the end thereof the following: " But so much of the order as enjoins the defendants from in any manner soliciting business of customers formerly of William Wall's Sons," shall not apply to Edwin R. Brinkerhoff and William F. Wall. As thus modified, the order should be affirmed.

Van Brunt, P. J., and Follett, J., concurred.

Order modified as directed in opinion and affirmed as modified, without costs.