Consumers' Oil Company *v.* Nunnemaker.

No. 17,350.

CONSUMERS' OIL COMPANY *v.* NUNNEMAKER.

CONTRACT.—*In Restraint of Trade.—Interdicted Territory, the Whole State Except One City.— Business, Selling Oil in One City.— Against Public Policy.*—A contract by which one engaged in selling oil in one city binds himself to refrain from carrying on his business in the whole State, with the exception of one other city, is unreasonable as in restraint of trade, and void and unenforcible even as to the city in which he had been engaged in the business.

From the Lake Circuit Court.

*Olds & Griffin,* for appellant.

JORDAN, J.—Appellant instituted this action to enjoin appellee from pursuing the business of selling oil and gasoline, and delivering the same to consumers, in the city of Hammond, Indiana. The action was commenced upon a written contract made and entered into by and between appellee and one H. T. Benham (who is described as "trustee and manager,") on the 3d day of February, 1893. The complaint avers "that on and prior to said date the said defendant was the owner of one horse and one spring wagon and three tanks and harness, cans, and other utensils for use in his said business as hereinafter alleged, and was engaged in the business of a retail oil and gasoline merchant and in selling and delivering oil and gasoline to the citizens of the city of Hammond, in Lake county, Indiana, and in conducting his business he traveled through the streets of the said city of Hammond, calling upon residents of said city at their places of business and residences, and sold and delivered them oil at the places desired by them, for the use of said citizens ; that he had at that time

established a trade in business in that line; that upon said date he entered into a written agreement with one Henry T. Benham, described in said contract as H. T. Benham, 'trustee and manager,' a copy of which is attached hereto and marked 'Exhibit A' and made a part hereof, by which contract the said defendant in consideration of three hundred dollars to him in hand paid by said Benham, the receipt of which was acknowledged, the said defendant sold, transferred and conveyed to the said Benham, his successors and assigns, all his right, title, and interest in and to his oil and gasoline business and plant, including the good will and reputation of said business, and all and singular the materials, chattels and personal property of every nature and kind whatsoever belonging to or in any way pertaining or used in or about said oil and gasoline business, among other things including one (1) horse, one (1) spring wagon, three (3) tanks, harness, cans, utensils, etc., consisting of everything used by the said defendant in his said business, and the said defendant further contracted and agreed with said Benham, his successors and assigns, that he, the defendant, would not, during the period of five years then next ensuing after the 4th day of February, 1893, do anything within the State of Indiana, outside of the city of Indianapolis, in the line of selling or delivering oil or gasoline to the houses of consumers by horse and wagon or otherwise, neither in his own behalf nor in his own name nor in connection with any partnership or corporation, nor as the agent of any person, partnership or corporation, nor in anywise do anything that would interfere with or compete with or work against the profit, advantage and business of the said Benham, as trustee and manager, or in any other name or style whatever, which he might assume or by which he might be known, or his successors or

assigns, during the said period of five years. Said defendant further covenanting and agreeing in said contract that he would not during said period of five years, within said territory accept any employment directly or indirectly, nor receive, solicit or fill orders in any capacity whatsoever for any oil or gasoline to be sold direct to or delivered at the houses or places of business of consumers by wagon or other conveyances after the manner of the business hereinbefore described and carried on as aforesaid by the said defendant, as oil merchant and dealer, or as commission merchant or agent, and further agreed that he would not countenance, promote or encourage the business of any competitor of the said H. T. Benham, trustee and manager, or of his successors or assigns, within the territory aforesaid, during the said five years aforesaid; and further agreeing, stipulating and authorizing any court of law or equity to interpose its authority to compel the performance of said contract and to restrain any breach of the terms thereof."

It is further alleged that before the violation of the contract in question, Benham sold, assigned and transferred all of his right, title, and interest in and to the property so purchased to plaintiff, a corporation duly organized under the laws of the State of New Jersey, and also assigned and transferred the written contract and all right, title, interest and good will of said business in the territory aforesaid, to plaintiff. It further avers that the defendant has entered into and is pursuing his said business of selling and delivering oil to the consumers of said city of Hammond, in violation of his said contract and is threatening to so continue in violation of the rights of plaintiff, inasmuch as he comes in competition with plaintiff, who is engaged in the same business. Appellee's insolvency is also alleged,

and a copy of the contract is filed with the complaint. An injunction is prayed to restrain the appellee from further pursuing his business in the city of Hammond.

A demurrer for insufficiency of facts was sustained to this complaint and this ruling of the court is assigned as error.

We are not favored with a brief upon appellee's part, but infer from statements in the brief of the learned counsel for appellant that the contract in controversy was assailed by the appellee upon the ground that it sought to prohibit him from selling and delivering oil at any place in the State of Indiana outside of the city of Indianapolis, and constituted an unreasonable restraint upon trade, and was, therefore, invalid and not enforcible in any respect.

Appellant contends that notwithstanding the territory is the entire State of Indiana, with the exception mentioned, in which appellee is restricted from pursuing his business as an oil merchant, the restraint is a reasonable limitation, and that the complaint based upon the contract in question set forth a sufficient cause of action for the relief thereby sought. It is settled that a contract in general restraint of trade is invalid, but one restraining a party from trading within reasonable limits so as not to be injurious to the interest of the public, is valid and may be enforced by an injunction, upon a proper showing of facts. *Beard* v. *Dennis*, 6 Ind. 200; *Duffy* v. *Shockey*, 11 Ind. 70; *Spicer* v. *Hoop*, 51 Ind. 365; *Baker* v. *Pottmeyer*, 75 Ind. 451; *Beatty* v. *Coble*, 142 Ind. 329.

The settled rule as enunciated by the American and English decisions of the highest courts seems to be that where, in the particular case before the court, the restraint in controversy, as to territory, appears to be broader or larger than is necessary to the protection of

the party seeking to enforce the restrictive contract, it is of no benefit to either party, but in that event becomes oppressive upon the party against whom the enforcement is sought, and being oppressive the law regards the restriction as unreasonable and injurious to the interests of the public.

It is not the interests of the parties alone, which in the eye of the law are to be considered the true test, but in each particular case, under the facts, the judicial inquiry is : Will it be inimical to the public interest? If so, then, and in that event, the agreement must he held as hostile to public policy, and therefore void. Public policy is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. This principle owes its existence to the very sources from which the common law is supplied. Greenhood Pub. Policy, pages 2 and 3.

The law regards the good will of a particular trade or business as a species of property, possessing a market value, and subject to sale or disposal. But it is also a well established principle of law and public policy, that where a person is engaged in trading or other legitimate pursuits, he shall not be unreasonably fettered in the exercise of such business, and when he sells or disposes of the good will incident thereto, the law will only sustain such a restraint as to his future engagement in such business or pursuit, as will appear to be a reasonable space of interdicted territory, and what are such reasonable limits is a question of law for the court to determine under all the facts and circumstances in each particular case. In support of the several general propositions herein asserted, see *Wiley* v. *Baumgardner*, 97 Ind. 66, and authorities there cited; *Lawrence* v. *Kidder*, 10 Barb. 641; *Hubbard* v. *Miller*, 27 Mich. 15;

*Horner* v. *Graves*, 7 Bing. 735 ; *Oregon Steam, etc.,
Co.* v. *Winsor*, 20 Wallace 64 ; *Taylor* v. *Blanchard*,
13 Allen, 370 ; *Dunlop* v. *Gregory*, 10 N. Y. 241 ; Green-
hood Pub. Policy, Chap. VI, page 683 ; 3 Am. and
Eng. Ency. of Law, 883, and authorities there cited ;
22 Am. Law Review, 873 to 889 ; *Mallan* v. *May*, 11
M. & W. 652.

In the case of *Dunlop* v. *Gregory, supra*, the court
of appeals of New York said : "Contracts, upon what-
ever consideration made, which go to the total restraint
of trade, * * anywhere in the State, are void. Such con-
tracts are injurious to the public, and operate oppressively
upon one party without being beneficial to the other.
* * The contract, to be upheld, must appear from
special circumstances to be reasonable and useful, and
the restraint of the covenantor must not be larger than
is necessary for the protection of the covenantee in the
enjoyment of his trade or business."

In the case of *Taylor* v. *Blanchard, supra*, it was
held that an agreement not to set up, exercise or carry
on the trade or business of manufacturing or selling shoe
cutters at any place within the commonwealth of Massa-
chusetts was void.

In the case of *Moore* v. *Bonnet*, 40 Cal. 251, a stipu-
lation not to engage in a business of a particular kind
in the county or city of San Francisco or State of Cali-
fornia, was held to be void.

In *Lawrence* v. *Kidder, supra*, a covenant not to
conduct the business of manufacturing or trading in
palm leaf beds or mattresses in the State of New York,
west of Albany, was held to be invalid.

In *Price* v. *Green*, 16 M. & W. 346, a contract not
to carry on the perfume business within six hundred
miles of London, was adjudged void.

In *Horner* v. *Graves, supra*, an agreement not to

practice dentistry within a district two hundred miles in diameter was held to be void.

In *Beal* v. *Chase*, 31 Mich. 490, where it appeared that the obligor sold a printing establishment and the business thereof, which extended over the entire State, a covenant not to engage in the same business in that State so long as the vendee should continue in the business at the place of sale, under the circumstances, was held to be reasonable and valid.

In *Rousillon* v. *Rousillon*, reported in L. R. 14 Ch. Div. 351; 22 Alb. Law Jour. 212, the English court of chancery held that there is no "hard and fast" rule holding contracts of this character, unlimited as to space, void, but that the validity depends upon the reasonableness of the contract, and where it appears that the broad restriction is reasonably necessary for the full protection of the contractee, it will be sustained.

In a recent English decision in the appeal of *Nordenfelt* v. *Maxim, Nordenfelt, etc., Co.*, Law Reports (1894) App. Cases, 535, where a patentee and manufacturer of guns and ammunition for war purposes, transferred his patent to a company, and covenanted with the latter not to engage in that business for a term of twenty-five years, it was held that owing to the nature of the business, and the limited number of customers to whom sales might be made (confined mainly to governments of countries), that the restraint imposed in that case was not larger than was necessary for the protection of the contractee, and not injurious to the public interest.

These decisions serve to illustrate the manner in which the courts, under varied circumstances, have been, and are, inclined to view such contracts. The rule in question, in its application by the courts, in later decisions, to an extent, seems to have been modified, and is made to yield, in some respects, to the nature or

character of the particular trade or business, and the territory over which it extends at the time of the sale of the good will.

Cases do, and will arise, as for instance in *Beal* v. *Chase, supra,* and *Nordenfelt* v. *Maxim, Nordenfelt, etc., Co., supra,* where the particular business has been built up so as to extend over an entire district or State, and sometimes beyond, or where, from its nature, the number of those who patronize it are comparatively of a limited number, and where, consequently, broad or enlarged restrictions are considered as reasonably necessary for the desired protection, and are, therefore, sustained.

Viewed, then, in the light of the authorities cited herein, how stands the case at bar? It appears, and is conceded by appellant, that the particular business or trade in which appellee was engaged at the time he sold out, and executed the contract in controversy, was confined to the limits of the city of Hammond. There is no contention that it extended to any other parts of the State, beyond these limits. Neither from the nature of the business nor otherwise does it appear that it was necessary for the protection of appellant that the appellee should be prohibited from engaging therein at any and all places in the State, other than the city of Indianapolis. It is a matter of general knowledge that there are numerous consumers of oil for fuel and illuminating purposes in this great and growing State, and it is manifestly to their interest that there should be competition in the selling of the same, at least, that the price thereof may be reasonable. The enlarged covenant of restraint as to territory, it is obvious, was unnecessary under the circumstances. It could serve no purpose except as a tendency towards the monopoly of the business. If appellant could buy out appellee and

restrict him in this manner, it might proceed to do so to every other person in the whole State engaged in a similar business, and eventually reduce the sale of oils in the State to comparatively few hands, or possibly to its own absolute control, and thus virtually stifle legitimate competition. The law has always been hostile to the creation of monopolies when they tend to impair the interest of the public. It is elementary that whatever is injurious to or against the public good, is void on the ground of public policy. This policy unquestionably favors competition in trade to the end that its commodities may be afforded to the consumer as cheaply as possible, and is opposed to monopolies which tend to advance prices to the injury of the public in general. *Cent. Ohio Salt Company* v. *Guthrie,* 35 Ohio St. 666; *People* v. *Chicago Gas Trust Co.,* 130 Ills. 268 (8 L. R. A. 497).

Appellant apparently insists that the contract may at least be held enforcible against appellee in the city of Hammond, and cite *Peltz* v. *Eichele,* 62 Mo. 171. In that case the agreement was not to enter into the manufacture of matches in the city of St. Louis, *or any other place, for five years.* The stipulation as to St. Louis was sustained upon the ground that it was reasonable, and could be separated from the other clause. It is a recognized principle that when a contract is or can be so separated in parts as to constitute two agreements, one illegal and the other legal, the latter may be enforced and the transaction *pro tanto* sustained. But it is otherwise where the contract in its nature is not divisible. *Board, etc.,* v. *Dennis, supra; Wiley* v. *Baumgardner, supra.*

The contract before us is not of this character, and does not come within the provisions of the rule stated, and it must either stand or fall as an entirety. The

restraint of the trade or business as therein stipulated as to territory, under the circumstances, was manifestly too large, and is, therefore, in violation of the principles of public policy to which we have referred, and consequently void, and cannot in any respect be enforced.

Judgment affirmed.

Filed November 21, 1895.