CHARLES D. RU TON and THEODORE W. JOHNSON, Respondents, *v.* JOHN N. EVERITT, Appellant.

*Covenant in restraint of trade — general in terms, limited in its scope by the context of an agreement of sale.*

A receipt for the purchase price of " stands " in West Washington market, New York city, including the good will and interest of the business theretofore conducted by the vendor, by whom the receipt was signed, contained the following agreement: " And I further agree not to enter into business in the same or similar line for the term of ten years from date, thus agreeing to throw all necessary influence which I can towards the increase of and for the benefit of the business of Charles D. Ru Ton," the purchaser.

*Held,* that the agreement must be read in connection with the surrounding circumstances and was not unlimited as to space or detrimental to the public, it appearing by the receipt that the business consisted in the sale of farm products consigned to the vendor by commission merchants in various parts of the country, and that the agreement evidently related to the sale of this business conducted exclusively in the city of New York and of its good will, the object being to prevent competition by the vendor in the city of New York, where alone there could be competition.

A covenant by the vendor of a particular business not to engage therein or in a similar business to the prejudice of the vendee is valid when such covenant is an incident to the sale of the good will of the business sold. Such a covenant

is not in restraint of trade so long as it is co-extensive with the interest to be protected and but adequate to secure to the vendee the full and, as against the vendor, the exclusive enjoyment of the thing purchased.

McLaughlin, J., dissented.

Appeal by the defendant, John N. Everitt, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of August, 1898, granting an injunction *pendente lite*, enjoining the defendant from engaging in a certain business in violation of an agreement made with the plaintiff Ru Ton, upon the sale to Ru Ton of certain stands in West Washington Market, New York city.

Ru Ton was an employee of the defendant in the business in question. In the month of December, 1896, the defendant, being in bad health, expressed his intention of going out of the business entirely, and offered to sell it to Ru Ton. This resulted in a sale which was consummated under a written agreement, reading as follows:

"New York, *Dec.* 18, 1896.

"Received from Charles D. Ru Ton the sum of one hundred dollars ($100) on account of the purchase of stands, Nos. 44, 46 & 48 Thompson avenue, West Washington Market, New York city, which he has this day purchased from me, the balance of the purchase money, to wit, Nineteen hundred dollars ($1,900), to be paid on April 3d, 1897. The sale this day made by me to him includes the good will and interest of the business heretofore conducted under the firm name of Everitt & Co., of which I am the sole owner, and includes all the stands, office furniture and fixtures, desks, safes, books, and all other things connected with said business as now conducted. And I further agree not to enter into business in the same or similar line for the term of ten years from date, thus agreeing to throw all necessary influence which I can toward the increase of, and for the benefit of, the business of Charles D. Ru Ton. I further agree to allow him to use the present firm name, if he so desires, in the continuation of said business; and I further agree, upon the payment as above provided, to deliver full possession of the same to him April 3d, 1897, and to give him any other and further agreements that may be deemed necessary to fully transfer to him the said business, and all the things connected with the same.          JOHN N. EVERITT."

After Ru Ton had paid the full purchase price and had taken possession and commenced business in his own name under this agreement, the defendant, in violation of his covenant, entered into a similar business in this city, and has since endeavored to deprive Ru Ton of the good will which he had thus purchased and paid for. The defendant did this deliberately, acting upon the theory that his covenant was void and unenforcible. Whether it is so is the main question presented by this appeal.

*Norman J. Marsh*, for the appellant.

*Christopher Fine*, for the respondents.

BARRETT, J.:

The appellant contends that his covenant here not to do business was unlimited as to space; in other words, that it embraced the entire world. This contention was undoubtedly made under the stress of the modern relaxation of the ancient rule upon the subject of covenants in restraint of trade. The courts of this State have gradually modified the original doctrine of the common law, that all restrictions upon trade are void, without regard to the circumstances of the particular case. The earlier cases here followed the old rule in England. Even as late as 1870 the Commission of Appeals, speaking through LEONARD, C., in *Saratoga Co. Bank* v. *King* (44 N. Y. 91), observed that " agreements restraining the use of any occupation or trade *beyond a locality of very moderate extent* are illegal and void on grounds of public policy." The first great advance in the direction of the modern doctrine was made in *The Diamond Match Co.* v. *Roeber* (106 N. Y. 473). It was there held that a covenant not to engage in the manufacture and sale of friction matches within any of the United States or its Territories, except Nevada and Montana, was valid. The restraint there was treated as partial and not general. This case was followed in *Leslie* v. *Lorillard* (110 N. Y. 519), and the effect of its reasoning summed up as follows: " Under the authority of that case it may be said that no contracts are void as being in general restraint of trade where they operate simply to prevent a party from engaging or competing in the same business."

In *Watertown Thermometer Co.* v. *Pool* (51 Hun, 157) there was

not even the exception of a remote State or Territory. The covenant distinctly embraced the entire United States. Yet the court, Martin, J., held that it was valid, adopting the *dicta* of Andrews, J., in *The Diamond Match Co.* v. *Roeber* (*supra*), and citing numerous cases in support of his position. "The cases cited," he adds, "seem to sustain the doctrine that a restriction which is no greater than the interest of the vendee requires, and by giving which the vendor has obtained an increased price for what he sold, is valid though it extended through the whole kingdom or country." This latter case, it is proper to say, was cited with approval by the Court of Appeals in *Oakes* v. *C. W. Co.* (143 N. Y. 439). Precisely the same doctrine was enunciated in *United States Cordage Co.* v. *William Wall's Son's R. Co.* (90 Hun, 429). There the agreement was that William Wall's Sons would not engage in the manufacture or sale of cordage *within the limits of the United States* except as an employee of the National Cordage Company. It was held to be valid and enforcible. "Since *The Diamond Match Company* case," said Parker, J., "it has been the law of the State that a covenant not to engage in business, made by a vendor *in connection with a sale of his business and good will*, is valid and enforcible." The same rule was laid down in *Hodge* v. *Sloan* (107 N. Y. 244); *Tode* v. *Gross* (127 id. 480), and *Underwood* v. *Smith* (19 N. Y. Supp. 380; affd., on opinion below, 135 N. Y. 661). Indeed, the absolute doctrine that a covenant in restraint of trade is void merely because it is unlimited in regard to space has been questioned even in England by so eminent an authority as Mr. Justice Fry. (*Rousillon* v. *Rousillon*, L. R. [14 Ch. Div.] 351.) And Vice-Chancellor James, in *Leather Cloth Co.* v. *Lorsont* (L. R. [9 Eq.] 345), observed that a man may enter into any stipulation, however restrictive, provided that the restriction, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract. These cases were discussed in *Maxim N. G. & A. Co.* v. *Nordenfelt* (L. R. 1893 [1 Ch.] 630), and Lord Justice Lindley there observed that, in his opinion, this was "the doctrine to which the modern authorities have been gradually approximating." Lord Bowen, in his celebrated opinion in this case, summarized the conclusion at which he had arrived as follows: "The rule as to general restraint of trade ought not, in my judgment, to apply where a trader or manu-

facturer finds it necessary, for the advantageous transfer of the good will of a business in which he is so interested, and for the adequate protection of those who buy it, to covenant that he will retire altogether from the trade which is being disposed of, provided always that the covenant is one the tendency of which is not injurious to the public." This last proviso also embodies the sole criticism of Lord Justice Lindley upon the judgments of Lord Justice Fry and Vice-Chancellor James in the cases already referred to. The third judge in the *Nordenfelt* case, Lord Justice A. L. Smith, said that, in his judgment, there was no such hard and fast rule as that every covenant in restraint of trade is *ipso facto* void if it is unlimited as to space. Applying the true rule to the facts of that case, he observed : " How can it be truly said that a restraint which is but co-extensive with the area traded over by the plaintiffs is unreasonable, and affords more than a fair protection to their interests ? In my judgment the limit of space in all these cases must necessarily vary with the ever-changing circumstances attending the development of trade, and the varying circumstances of the particular trader; and, bearing in mind what the plaintiffs' trade is, the limit, though co-extensive with the world, is not, in my opinion, unreasonable."

It is thus apparent that the courts in which this doctrine originated have kept pace with modern conditions. In that respect they afford an example to courts in this country, where the hard-and-fast rule seems still to be adhered to. (*Bishop* v. *Palmer*, 146 Mass. 469 ; *Consumers' Oil Co.* v. *Nunnemaker*, 142 Ind. 560.) The result of the authorities both here and in England justifies this statement of the present governing rule — a covenant by the vendor of a particular business not to engage therein or in a similar business to the prejudice of the vendee is valid when such covenant is an incident to the sale of the good will of the business sold. Such a covenant is not in restraint of trade so long as it is co extensive with the interest to be protected, and but adequate to secure to the vendee the full and, as against the vendor, exclusive enjoyment of the thing purchased.

Applying this rule to the facts of the case at bar, it seems quite clear that the present agreement is valid and enforcible. The instrument must be read in connection with the surrounding cir-

cumstances; and also in the light of the rule stated by ALLEN, J., in *Curtis* v. *Gokey* (68 N. Y. 304), that "the law will not presume an agreement void as illegal or against public policy when it is capable of a construction which would make it consistent with the laws and valid." There is nothing in the instrument, when fairly construed, which makes the covenant unlimited as to space or detrimental to the public. It is true that it lacks express words of limitation. But these words may be implied as well as expressed. The instrument, it will be observed, is not a formal agreement, but a mere receipt signed by the defendant alone, and as thus signed delivered to Ru Ton. It refers to the business sold as a business conducted in "New York city." The papers show that this business consisted in the sale of farm products consigned to the defendant as a commission merchant from farmers in various parts of the country. What the parties were thinking about and dealing with was the sale of this business conducted exclusively in the city of New York, and of its good will. The market was in the city of New York, and competition could only be there. The receipt was drawn in contemplation of these facts. The covenant not to enter into a business in the same or a similar line was but a natural and necessary incident of such a sale. The object thereof was plainly to prevent competition by the vendor; that is, competition here, where alone there could be competition. When the defendant says, "I further agree not to enter into business in the same or similar line for the term of ten years from date," he says, in effect, that for that length of time, so far as he is concerned, he will leave the field of business activity here in a particular line to the vendor. What object would there be in extending the defendant's disability beyond any possible area of competition? And why should the language, though general, be construed contrary to what we can plainly see was the intention of the parties? There certainly could be no competition in this particular business outside of the locality where farmers find their market, and apart from local agencies, namely, the city of New York and its farm produce commission merchants. The minds of the parties never passed beyond this area of possible competition, and the writing was but an expression of what was in their minds with relation to the business done within that area. This is accentuated

by the explanatory words which immediately follow the covenant, namely: " *Thus agreeing* to throw all necessary influence which I can toward the increase of and for the benefit of the business of Charles D. Ru Ton." How could a covenant not to engage in the business of a commission merchant for the sale of farm products in the world at large (outside of New York city) have any bearing upon the vendor's agreement to use his influence to increase the particular business here sold? The true paraphrase is clearly this: " I agree not to enter into the same or a similar business in competition with you for ten years, thus agreeing during that period to help rather than hinder you in increasing the business sold." When the words " in competition with you " are understood and implied (as clearly upon the surroundings they must be) the locality of the business, namely, the city of New York, is equally understood and implied. The covenant as to space was thus limited to the locality where competition was possible. The case on this head is directly within the rule laid down in *Hubbard* v. *Miller* (27 Mich. 15) and within the principle upon which the following cases were decided: *Smith's Appeal* (113 Penn. St. 579); *Thomas* v. *Miles* (3 Ohio St. 274); *Peltz* v. *Eichele* (62 Mo. 171); *Boardman* v. *Wheeler* (15 Wkly. Dig. 325; affd., 27 Hun, 616); *Heichew* v. *Hamilton* (3 G. Greene [Iowa], 596), and see *Curtis* v. *Gokey* (*supra ;* 5 Hun, 555).

Upon both the law and the facts, we think that a clear case for an injunction was made out. There was here an attempt on the defendant's part to deprive the plaintiff of the benefit meant to be conferred upon him by the contract of sale. The defendant's course is quite inexcusable. He would take, but not give. Retaining the purchase price, he in fact seeks to repossess himself of what that purchase price represented. The law will not permit him, upon the hypocritical pretense of defending a rule of public policy, to cheat the plaintiff out of the essential thing which the latter bought and paid for.

The order was right and should be affirmed, with ten dollars costs costs and the disbursements of the appeal.

VAN BRUNT, P. J., RUMSEY and INGRAHAM, JJ., concurred; MCLAUGHLIN, J., dissented.

McLAUGHLIN, J. (dissenting):

A contract not to engage in business is not in restraint of trade so long as it is only co-extensive with the interest sought to be protected, but when the covenant goes beyond this and thereby becomes oppressive to one of the parties without conferring a corresponding benefit upon the other, then such covenant is said to be unreasonable and injurious to the public interests and, therefore, invalid. (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473 ; *Saratoga Co. Bank* v. *King*, 44 id. 87 ; *Ward* v. *Byrne*, 5 M. & W. 548 ; *Consumers' Oil Co.* v. *Nunnemaker*, 142 Ind. 560 ; *Bishop* v. *Palmer*, 146 Mass. 469 ; *Taylor* v. *Saurman*, 110 Penn. St. 3 ; *Davies* v. *Davies*, L. R. [36 Ch. Div.] 359 ; *Maxim Nordenfelt Co.* v. *Nordenfelt*, 68 L. T. Rep. [N. S.] 833.) Applying this principle to the contract under consideration, it seems to me clear that the defendant's covenant " not to enter into business in the same or similar line for the term of ten years " is invalid. The business sought to be protected is local in its character while the covenant is general. The prevailing opinion seems to concede that the covenant in this contract is invalid if read literally ; but it is insisted that it does not in fact express what the parties intended, and that, therefore, it should be read as though the defendant had agreed not to enter into the same or a similar business *in competition* with the plaintiffs for ten years, and that when the words " in competition with " are understood and implied, then the locality of the business, namely, the city of New York, is equally understood and implied, and thus the covenant of space limited to the locality where the competition is possible. But the covenant in this contract is expressed in plain terms. It is not ambiguous, and we have no right to assume, such being the fact, that anything was intended by the parties except what a fair construction of the language itself implies. The court has no right to take from or add to the contract, and to do so is simply to make a new contract for the parties instead of construing one which they have made.

This contract is not in partial restraint of trade, and it cannot be saved upon that ground. It is general in its terms and absolutely prohibits the defendant from engaging in the same or a similar business in any place whatsoever for the term of ten years, and there is absolutely nothing in the contract or in the papers before us which

warrants the assumption that it was intended to apply only to the city of New York. Such construction can only be placed upon it by inserting words not therein used, and giving to the covenant a meaning and purpose not expressed in it and which cannot fairly or reasonably be implied from it. The respondents' attorney, as appears from the brief filed on the argument before us, insists that the parties intended that the covenant should apply to the boroughs of " Manhattan, Bronx, Brooklyn, Queens and Richmond ; " the court below enjoined the defendant from doing business at any place in the " borough of Manhattan," while in the judgment of this court, as appears from the prevailing opinion, the defendant should be enjoined from doing business in the city of New York. These different views simply illustrate the futility of an attempt to construe the contract upon the assumption that certain words not expressed in it are to be understood and implied from it. I think the contract expressed just what the parties intended, and my view in this respect is strengthened by the fact that the defendant had customers in several States who were in the habit of sending him farm produce to be sold on commission, and to secure these customers for the plaintiff the covenant in question was inserted in the contract to absolutely prohibit the plaintiff from engaging in the same or a similar line of business for the time specified. In all cases in which contracts in restraint of trade have been held invalid the covenant might have been sustained if the courts had adopted the reasoning of the learned justice writing the prevailing opinion. The purpose of this covenant was to. prevent competition, and in trying to do this the parties went too far. The covenant is oppressive to the defendant and does not confer a corresponding benefit upon the plaintiff ; and, therefore; under the rule above stated and under every well-considered decision which I have been able to find, it must be held to be invalid.

For these reasons I am unable to concur in the opinion of Mr. Justice BARRETT.

· · Order affirmed, with ten dollars costs and disbursements.