JOHN D. P. HUNGATE, Appellant, v. ROBERT W. RANKIN *et al.*, for the use of Thomas A. Apperson, Appellant.

APPEAL FROM CLAY.

Where, by an agreement, both parties are mutually bound, each to the other, to perform at the same time; as the one to deliver hogs, and the other to pay for them on delivery; neither can sue on the contract until the property is delivered, or until the price therefor is ready and offered to be paid, or a reasonable demand for the delivery of the property.

The admissions of a nominal plaintiff will be received to bind a beneficial one, if they were made in the presence of a beneficial plaintiff, and he does not contradict them. And if the nominal plaintiff acts as agent, the beneficial plaintiff will be bound by the admissions of the agent, within the scope of his authority.

THIS was an action of trespass on the case on promises, tried by the Clay Circuit Court, without the intervention of a jury, founded upon the following written contract:

CLAY COUNTY, ILL., July 28th, 1857.

I, John D. P. Hungate, have this day sold to R. M. Rankin and L. Fulkhouser one hundred and seventy-five head or more, of well-fatted hogs—one hundred and fifty of said hogs to weigh two hundred pounds and upwards, twenty-five to weigh one hundred and eighty pounds; said Rankin & Co. to receive said hogs between the 1st and 10th of December, on the farm of said Hungate, and pay $4.25 per hundred gross, $800 in gold, the balance in currency.

JOHN D. P. HUNGATE.
R. M. RANKIN.

Receipt on the back:

Received on the within contract, $200.
JOHN D. P. HUNGATE.

Also assigned, August 26th, 1857:

Received of T. A. Apperson, $200, for the within contract and above receipt.
R. M. RANKIN.

The testimony of defendant was in substance as follows:

*George Monical* being called, testified, that he knew Rankin, one of the plaintiffs, and the defendant; that he heard Rankin say there was a plot laid to break the contract with the defendant, on the morning of the 10th of December, 1857; that it was arranged to go to defendant's house late in the evening of that day, but not in time to weigh the hogs; thought they did not intend to take the hogs, but wanted to break the contract with defendant; that he knew the hogs of Hungate—he had 200 head on the ninth of December last; that he bought 180 head of hogs from Hungate a short time after Rankin was

there ; the hogs were well fatted ; 140 weighed 200 pounds and upwards ; some twenty or thirty weighed 180.

*Dr. Bougher* testified, that he heard Rankin say, a day or two ago, that it was understood when they went to defendant's house, that they would not take his hogs, but wanted to break the contract.

*John Connelly* testified, that he lived in the neighborhood of defendant ; that he had 19 well-fatted hogs, which weighed between 200 and 300 pounds ; that he had sold them to defendant, to apply on his contract with plaintiff ; that on the 9th and 10th days of December they were subject to the order of defendant. He had seen the hogs of Hungate ; they were a good lot of well-fatted hogs.

*David Shields* was then called, and testified, he lived within a mile of defendant ; had 45 head of well-fatted hogs, which he had sold to Hungate to apply on his contract with Rankin ; that the hogs were subject to the order of Hungate, when Rankin was there ; that the hogs would weigh over 200 pounds ; that Rankin came to his house when the sun was about one hour high, on the 10th of December, and told him that Hungate did not have the hogs weighed, and he would not take them.

*Margaret Monical* testified, that she was at the house of Hungate on the 10th day of December last ; that late in the evening Rankin and others came to the house of defendant, and asked him if he had the hogs weighed, and defendant said he had not, but that he would weigh them, if there was time, but he thought it was too late in the evening to get through ; that the hogs were handy, and he wanted him (Rankin) to take them under the contract. Rankin refused to take the hogs because they were not weighed. Hungate proposed to commence weighing them, but Rankin said he had not time to get through before night.

The plaintiff (Rankin) called *Mr. True*, who testified that he went with Apperson and Rankin to the house of Hungate, on the 10th day of December last ; that he went on the request of Nichols, who was to get the hogs from Apperson ; that he and Apperson went to the house of Rankin on the morning of the 10th of December, and that they and Rankin rode over to the house of Hungate in the afternoon ; that they got to the house of defendant about the middle of the afternoon on the 10th of December, and Rankin demanded the hogs of defendant, and asked him if they were weighed, and Hungate said not, but that he could weigh them, and that the hogs were ready, but thought there was not time to weigh them that evening ; but said he would commence and get through as soon as he could.

Saw Rankin and Apperson together through the day of the 10th; thinks they were conversing about the contract with Hungate; that the understanding was not to take the hogs, if they could break the contract made with Hungate, who appeared anxious that they should take the hogs, and wanted to commence weighing them that evening.

Whereupon the court proceeded to render judgment for the plaintiff for two hundred dollars. And the defendant, by his attorney, entered a motion for a new trial.

The court overruled the motion for a new trial, and rendered judgment against the defendant for two hundred dollars. Defendant excepted.

SILAS L. BRYAN, and E. L. HOWETT, for Appellant.

A. KITCHELL, for Appellees.

WALKER, J. By the provisions of this agreement, the parties were mutually bound, each to the other, to perform their several undertakings at the same time. The terms of this agreement require the appellant to deliver the number and kind of hogs specified, between the first and tenth days of December, and the appellees to pay the contract price for them when delivered. Appellant was not bound to deliver them until the appellees should pay for them, nor were appellees bound to pay until they received the property. The performance of these acts being mutual and dependent on each other, the appellant could not maintain an action for a breach of contract until he delivered the property, or was ready and willing and offered to deliver, within the time limited by the contract, nor could appellees insist upon a breach of contract unless they were ready and willing and offered to perform their part of the agreement within the same time. *Greenup* v. *Stoker*, 3 Gilm. R. 213; 1 Saund. R. 33.

The evidence shows that appellant, on the ninth and tenth days of December, had two hundred head of well-fatted hogs; that soon after that time he sold of those hogs one hundred and eighty head to Monical, who testifies that one hundred and forty of that number weighed over two hundred pounds, and that twenty or thirty of the remainder of them weighed over one hundred and eighty pounds. Of the weight of the remainder of the lot there is no evidence, except that when Rankin made the demand, appellant informed him that he had the hogs convenient, and no objection appears to have been made either to the number or weight. Other portions of the evidence show that appellant, previous to that time, had purchased from Shields

forty-five head, weighing from two to three hundred pounds each, and had also purchased of Connelly nineteen head, weighing over two hundred pounds each, all of which were conveniently situated in the neighborhood, and were subject to appellant's order on the tenth of December. The evidence shows that when Rankin and Apperson went to appellant on the tenth of December to demand the hogs, he offered to commence weighing and delivering them, and to continue until it was completed. At that time Rankin made no objection that the hogs were not all on appellant's farm, and there is nothing in the evidence from which we can infer that they could not have been there by the time those on his farm were weighed and delivered, if it had been necessary to deliver them to fill his contract. From this evidence we are not prepared to say that appellant was not ready and willing to perform, or that he did not offer to perform his part of the contract.

The objection made at the time, was, that appellant did not have the hogs weighed when the demand was made, and this is urged as a breach that should entitle appellees to recover. The evidence shows that Rankin and Apperson had determined not to receive the hogs, and delayed going to appellant, on the tenth of December, until it was too late to deliver the hogs. There was no evidence that they were ready and willing to pay for and receive the hogs if they had been weighed when they were demanded. But the determination formed by them not to receive the hogs, and the delay in going for the purpose of preventing a delivery, very clearly indicates that they were not willing and ready to perform their part of the agreement, and no offer to perform was attempted to be shown. And unless appellees were ready, willing and offered to perform, they have no right to recover for a failure on the part of appellant to tender the hogs. Appellees were equally bound to tender the money as appellant was to have tendered the hogs.

It was urged that the admissions of Rankin should not have been received to bind Apperson, the beneficial plaintiff. He was undoubtedly bound by what was agreed between him and Rankin before they went to demand the hogs, and he is likewise bound by the statements of Rankin in his presence, in reference to the contract, which he failed, at the time, to contradict. And the evidence of the understanding had between them on the tenth of December, before going to appellant, was a circumstance from which a jury might have inferred an agency, and if Rankin was acting as his agent in this matter, he should be bound by the admissions made by the agent within the scope of the power delegated, while engaged in carrying out the ob-

ject of the agency. We are, therefore, of the opinion that the court did not err in admitting this evidence.

The judgment of the court below should be reversed, and the cause remanded for further proceedings.

*Judgment reversed.*