PIERRE V. A. BRETT, Appellant, *v.* MARTIN C. EBEL and WILLIAM G. BRETT, Respondents.

*Sale of the good will of a freighting business — a good will may be sold, although there is no "plant" — restraint of trade — Federal Anti-Trust Act.*

A party sold "all his interest and good will in the business of freighting vessels for Port au Prince and said Brett's Line, Haiti Packets" and for a time mentioned agreed not to solicit freights nor do any business with Port au Prince, in consideration of a certain sum to be paid to him.

*Held,* that the good will of the business might be sold, although there was no
" plant," and that it furnished a valuable consideration;

That the contract in question involved no unreasonable restraint of trade, nor
was it invalid under the Federal Anti-Trust Act (26 U. S. Stat. at Large, 209)
providing that "Every contract, combination in the form of trust or otherwise,
or conspiracy in restraint of trade or commerce among the several States, or
with foreign nations, is hereby declared to be illegal," as the restraint in ques-
tion was merely ancillary to a lawful contract, and was designed only to pre-
vent the vendor from competing with the purchaser within a limited area.

Appeal by the plaintiff, Pierre V. A. Brett, from a judgment of
the Supreme Court in favor of the defendants, entered in the office
of the clerk of the county of New York on the 21st day of Decem-
ber, 1897, upon the dismissal of the complaint by direction of the
court after a trial at the New York Trial Term, and also from an
order entered in said clerk's office on the 10th day of January, 1898,
denying the plaintiff's motion for leave to go to the jury on specific
questions.

The action was brought to recover the sum of $300, under a con-
tract between the plaintiff and the defendants, the material parts of
which are as follows :

" Whereas, both parties are engaged in the business of ship-
brokers, chartering vessels for various ports in the West Indies and
South America ;

"And, Whereas, the party of the second part (the plaintiff here)
has built up a business in freighting vessels for Port au Prince,
Haiti, and has established a line known as Brett's line, Haiti
Packets ;

"And, Whereas, the parties of the first part (the defendants
here) are desirous of acquiring said business and said line :   *   *   *

" The party of the second part hereby transfers and sells to the
party of the first part all his interest and good will in the business
of freighting vessels for Port au Prince and said Brett's Line, Haiti
Packets (not including any right to use that name), and for the term
hereinafter mentioned agrees not to solicit freights nor do any busi-
ness with Port au Prince in or from any place or places in the
United States east of the Mississippi river, except that he may, as a
broker, effect charters for vessels to and from Port au Prince, and
may sell to merchants merchandise for Port au Prince.   *   *   *

" The parties of the first part hereby agree to pay the party of the second part the sum of eighteen hundred dollars a year, in equal monthly payments in advance, beginning on the 7th day of November, 1894, during the term hereinafter mentioned.

" This agreement shall continue in force for as long a time as shipments by sail are made to Port au Prince by H. Becker & Co. of the city of New York or their successors, but in no event shall the term be less than five years."

The plaintiff proved the execution of this contract and its performance upon his part. Thereupon he rested. The defendants' counsel then moved to dismiss the complaint upon the ground that the contract was a *nudum pactum;* that the plaintiff had no good will or interest in trading vessels which he could sell, and that the contract was contrary to the act of Congress passed July 2, 1890, entitled " An act to protect trade and commerce against unlawful restraints and monopolies." The motion was granted and plaintiff excepted. The plaintiff then asked leave to go to the jury upon the various questions presented by the evidence, but his request was denied, to which denial he excepted.

*Edward B. Whitney,* for the appellant.

*William F. Randel,* for the respondents.

BARRETT, J. :

The defendants claim that the right to solicit freights to Port au Prince was not a right that the plaintiff could sell, and consequently that it furnished no valid consideration for the contract in question. The contention proceeds upon a misconception of the nature and scope of the contract. What the plaintiff thus sold to the defendants was the good will of his freighting business. He had been engaged in this business for some fifteen years and he was well known in it. He testified that the best shippers to Port au Prince had always given him the preference in their shipments to that port. The business was a valuable one and its good will was essentially desirable. The defendants also contend that the contract was without consideration because no material " plant " was involved in the transaction. But the good will of a business may be sold independently. A physician may sell the good will of his practice

without selling his office furniture or his surgical instruments. So a lawyer may sell the good will of his clientage without selling his library. The same rule applies to the good will of a mercantile business; in fact, to good will generally.

The contract in question involved no unreasonable restraint of trade within the rules laid down in *Diamond Match Co.* v. *Roeber* (106 N. Y. 473). The plaintiff's covenant here was necessary to effectuate the object of the sale of his good will. If such a covenant were illegal, it would seriously affect the sale of any man's business where the element of good will entered into the transaction. The covenant in question is generally an important incident of every such sale. The probability, or even the possibility, of subsequent competition on the seller's part would certainly prevent him from securing the full value of his property from any sensible or prudent purchaser. The covenant here is the ordinary one attached to such sales, and it is clearly valid.

The rule laid down in the case cited has been frequently reaffirmed, and it is now the settled law of this State. (*Hodge* v. *Sloan*, 107 N. Y. 244; *Leslie* v. *Lorillard*, 110 id. 519; *Tode* v. *Gross*, 127 id. 480; *Underwood* v. *Smith*, 46 N. Y. St. Repr. 654; affd., 135 N. Y. 661; *Francisco* v. *Smith*, 143 id. 488.)

The remaining question is whether the contract is invalid under what is known as the Federal Anti-trust Act. (26 U. S. Stat. at Large, 209.) The defendants claim that it is invalidated by the 1st section of that act, which provides as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

It was held by the Supreme Court of the United States in the case of *U. S.* v. *Trans-Missouri Freight Association* (166 U. S. 290) that these prohibitory provisions apply to all contracts in restraint of interstate or foreign trade or commerce, without exception or limitation; and that they are not confined to those in which the restraint is unreasonable. The opinion in that case, however, must be read in the light of its facts. The contract there was not founded upon or connected with any sale of property or good will. Thus the restraint was not ancillary to any lawful contract. The particular contract there under consideration was one which was

entered into between competing railroads for the purpose of thereby affecting traffic rates for the transportation of persons and property. We find nothing in the opinion to warrant the extreme view taken by the defendants here. On the contrary, we find language suggestive of the opposite and certainly the more reasonable view.

"A contract," said Judge Peckham (at p. 329), "which is the mere accompaniment of the sale of property, and thus entered into for the purpose of enhancing the price at which the vendor sells it, which in effect is collateral to such sale, and where the main purpose of the whole contract is accomplished by such sale, might not be included, within the letter or spirit of the statute in question."

It should be observed that the act which was there under consideration was entitled "An act to protect trade and commerce against unlawful restraints and monopolies." The word "contract" in the 1st section is joined with the words "combination" and "conspiracy," thus plainly indicating the mischief aimed at by Congress. The history of that act emphasizes this view. It was clearly aimed at the so-called "trusts" or monopolies now so familiar in this country, whose main object was the restraint of trade. The intention was undoubtedly to declare every contract illegal which was in the line of these evils. But it certainly was not intended to prohibit a man from selling his business in the ordinary way and from thereupon obtaining the full value thereof through the instrumentality of an incidental covenant not to compete with the purchaser within some limited area. The rules upon this subject are very fully and clearly stated and the cases reviewed in *United States* v. *Addyston Pipe & Steel Co.* (85 Fed. Rep. 271).

The covenants which are generally upheld are there classified by Judge Taft, and that under consideration is within the first of the classes to which he refers, namely : Covenants "by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold."

In our judgment the present contract is not in contravention of this Federal act. It certainly is not within its spirit. If that act were to be construed literally and technically so as to embrace such a contract as the present, it would involve consequences most harmful to the commercial community, consequences which, in our judgment, were never contemplated by the lawmakers.

We think, therefore, that the dismissal of the complaint was erroneous and that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide event.

VAN BRUNT, P. J., RUMSEY, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.