WILLIAM A. TICHENOR

*v.*

HENRY P. NEWMAN.

*Opinion filed June 21, 1900.*

1. PARTNERSHIP—*when one partner may sue another at law.* Where a physician sells his real estate and medical practice to another, and forms a partnership for a limited period for the express purpose of more effectually transferring the good will of the business to the purchaser, the seller's undertakings in that regard are for the individual benefit of the purchaser, and their non-performance vests in the latter a right of action at law for damages without resorting to partnership accounting.

2. SAME—*when one partner may sue another on guaranty of good will of business.* A guaranty by the seller of a medical practice that one-half the gross earnings (collected or uncollected) of a partnership formed for a limited period for the purpose of securing the good will of the business to the purchaser shall exceed a certain sum, otherwise the seller will account for the deficiency or credit it on the purchaser's individual indebtedness to the seller, may be sued upon at law by the purchaser, since a partnership accounting would not be necessary to a determination of liability.

3. PLEADING—*one suing on contract must aver performance of conditions or an excuse.* One suing on a contract must aver and prove performance by him of conditions necessary to fix the defendant's liability, or he must aver either his rejected offer to perform such

conditions or his willingness to perform until defendant's conduct excused performance.

4. EVIDENCE—*conversations prior to written contract not admissible to vary its terms.* In an action on a written contract for the sale of a business, which contains a specific guaranty as to the value thereof, prior conversations between the buyer and seller as to such value are not admissible.

5. SAME—*what incompetent in action by physician for breach of contract.* In an action by a physician for breach of a contract selling him a medical practice, under the terms of which he was to use his best efforts to promote the interests of a partnership formed between himself and the seller, the defendant cannot show that during the partnership period the plaintiff's name appeared in the city directory as secretary and treasurer of a corporation, since plaintiff is not bound by such statement.

6. ACTIONS AND DEFENSES—*when physician may sue without proving license.* The purchaser of a medical practice may sue for damages for breach of the seller's undertakings without showing affirmatively that he had a license from the State Board of Health to practice medicine in Illinois.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELEY, Judge, presiding.

The appellant, Tichenor, brought assumpsit against the appellee, Newman, in the circuit court of Cook county and recovered a judgment in the sum of $4000, which judgment was reversed by the Appellate Court for the First District, on appeal. The Appellate Court did not incorporate in its judgment a finding of facts and did not remand the cause. The declaration was as follows:

"For that whereas, heretofore, to-wit, on the 15th day of October, A. D. 1894, the said plaintiff and said defendant made and entered into with each other a certain agreement in writing, bearing date the day and year last aforesaid, in the words and figures following, to-wit:

"'An agreement made on the 15th day of October, A. D. 1894, by and between Dr. Henry Parker Newman and Dr. William A. Tichenor, both of the city of Chicago.

" '*Witnesseth:* Whereas Dr. Newman is an established physician and surgeon at No. 492 West Adams street, in said city, and as such is doing a lucrative practice; and whereas, said Tichenor has recently moved to and located in said city to engage in the practice of medicine; and whereas, said Newman desires to retire from the general practice of medicine and to confine his practice to that of a specialist, and desires also to sell said premises No. 492 West Adams street, together with the good will of his general practice in so far as it can be sold or transferred,—his practice, and the good will thereof, as a specialist in gynecology and abdominal surgery being expressly excepted and reserved by him from the operation of this contract:

" 'Now, therefore, in consideration of the premises and of the mutual promises of the parties each to the other, as hereinafter expressed, they have agreed, and do hereby agree, to and with each other, as follows:

" '*First*—Said Newman sells and will deliver possession of, and said Tichenor buys, said premises No. 492 West Adams street, in the city of Chicago, having a front on the south line of said street of twenty-six feet and a depth of one hundred and eighty-seven (187) feet, more or less, to an alley, together with the buildings and improvements thereon, and (subject to the limited interest as partner by him reserved therein) the medical practice and business heretofore and now being conducted by said Newman at said No. 492 West Adams street, and the family practice connected therewith, all for the price and sum of twelve thousand dollars ($12,000),—ten thousand dollars ($10,000) of which are to be paid on delivery of deed in cash, and the balance of two thousand dollars ·($2000) shall be paid in a note of said Tichenor, guaranteed by Henry D. Laughlin, payable one year after its date, which date shall be the date on which the transaction is consummated. Title to said premises to be good or no sale, to be free and clear of liens or encumbrance,

and to be so conveyed by said Newman. Conveyance to be by·deed of general warranty, seller to furnish merchantable abstract of title to the premises, brought down to date, and to do so within thirty days of date of this contract. Tichenor pays down five hundred dollars ($500) on account of said cash payment, and will pay the other nine thousand and five hundred dollars ($9500) within twenty days of the date on which such abstract is delivered to him, if the title is good and is free and clear of all liens and encumbrances, provided no difficulty-producing delay is encountered by him in securing a loan on the property amounting to six thousand dollars ($6000) at a rate of interest not in excess of six per cent per annum, it being understood between the parties that so much of the twelve thousand dollars ($12,000) is to be raised in this way and paid over to said Newman on account of the purchase. Failing or refusing to consummate his purchase within the time herein fixed, without fault on the part of said Newman or other legal excuse, said Tichenor shall forfeit to said Newman said five hundred dollars ($500) this day paid, as liquidated damages, otherwise the money to be returned to him by said Newman: *Provided, however,* in the event of the said Tichenor failing to complete the purchase of said premises as herein agreed and submitting to the forfeiture herein provided, then and in such case this contract shall cease to be of any further force and effect, and such forfeiture shall be a rescission of the partnership agreement herein provided for, and said Tichenor shall have no further rights in the business of said Newman, and shall forfeit to said Newman all the moneys he may have received from said practice under this contract.

" '*Second*—For the purpose of establishing the said Tichenor in said practice and in order to effectually transfer to him the good will of the business, the parties hereby form a co-partnership in the practice of medicine and surgery, to continue from this date until December 31,

1895, when said Newman is to withdraw unless the co-partnership is by mutual consent longer continued. But it is distinctly understood that said Newman reserves all the fees derived from his services as a specialist in gynecology and abdominal surgery during said term, and in these fees said Tichenor is to have no interest; all other fees and earnings of the parties in said business, earned during said term, shall be divided between them, share and share alike. Said Newman will designate one certain hour in the day as his office hour at said premises No. 492 West Adams street, and will attend for business there at that hour as faithfully as possible, and, unless otherwise agreed by the parties hereto, on all days except Sundays: *Provided,* if said Newman carries out his present intentions and establishes a private hospital or medical retreat so near said premises as to make it practicable for him to substitute that place for said premises for such office work, he shall have the right to make the substitution. He will, during said term, make known to his patrons the fact of the partnership; will, to the best of his ability, introduce said Tichenor to them and unto their families as a physician and a man worthy of their confidence, and will, so far as lies in his power, establish him in said practice. He will send him, wherever not objected to by the patient, to answer calls for him and will personally attend such cases as he may be personally insisted on, and will in good faith further do whatever he can reasonably and properly to install or establish said Tichenor as his successor in said practice. Both parties agree to use their best efforts to promote the interests of the co-partnership, subject to the right hereinbefore reserved to Dr. Newman to continue the practice of his specialty.

"'*Third*—Said Newman guarantees to said Tichenor that the share of Tichenor in the actual earnings and receipts of the co-partnership prior to December 31, 1895, shall be at the rate of as much as twenty-five hundred

dollars ($2500) per annum, and that if it be less he will credit the amount of the difference between what it is at the end of the term and said guaranteed sum on said two thousand dollars ($2000) note if not paid, and if paid, will re-pay the amount of such difference to him within thirty days after that date.

"'*Fourth*—Books of account shall be kept, and both parties will promptly enter or cause to be entered in them, in a proper manner, all fees and other charges by them respectively earned for account of the co-partnership, as well as all collections or receipts by each made for account of the partnership.

"'In witness of all which the parties have hereunto set their hands, in duplicate, the day and year first above written.

H. P. NEWMAN,<br>W. A. TICHENOR.'

"And thereupon, in pursuance of and in accordance with said agreement, the said plaintiff did purchase from said defendant said premises No. 492 West Adams street, together with the buildings and improvements thereon, and (subject to the limited interest as partner by him reserved therein) the medical practice and business of said defendant, and the medical practice connected therewith, and the good will thereof, for the price of $12,000 in said agreement mentioned and described, and the said plaintiff paid to said defendant therefor the sum of $10,000 in cash, and said defendant thereupon conveyed to said plaintiff said premises No. 492 West Adams street and delivered the possession thereof to said plaintiff, but said defendant utterly failed and refused, during the term mentioned in said agreement, to make known to his patrons the fact of the partnership formed in and by said agreement, and said defendant during said term failed and refused to introduce said plaintiff to them or into their families as a physician and a man worthy of their confidence, and said defendant during said term utterly

failed and refused, so far as lay in his power, to establish said plaintiff in said practice, and said defendant during said term utterly failed and refused to send said plaintiff, wherever not objected to by the patient of said defendant, to answer calls for said defendant, and that said defendant during said term utterly failed and refused in good faith further to do what he could reasonably and properly to install or establish said plaintiff as the successor of the said defendant in said practice. And the plaintiff says that during the whole of the term aforesaid he used his best efforts to promote the interests of the co-partnership mentioned in and formed by the said agreement between him and said defendant, but that said defendant during the whole of said term utterly failed and refused to use his best efforts to promote the interest of the said co-partnership, subject to the right in said agreement reserved to him to continue the practice of his specialty. And the plaintiff says that, without any fault or omission or neglect on his part, the share of said plaintiff in the actual earnings and receipts of said co-partnership prior to December 31, A. D. 1895, did not amount to the rate of as much as $2500 per annum, but that, on the contrary, by reason of the neglects and refusals of defendant aforesaid, the actual earnings and receipts of said co-partnership prior to December 31, A. D. 1895, were less than the expenses of carrying on the business of said co-partnership, and by reason thereof the share of said plaintiff in the actual earnings and receipts of said co-partnership amounted to nothing. By means whereof the said defendant, under and by virtue of his said guaranty in said agreement contained, became liable to pay to said plaintiff a sum of money equal to $2500 per annum for the period of one year and two and one-half months, and the amounts paid out and expenses by said plaintiff in carrying on the business of the said co-partnership amounting to the sum of to-wit, $6000, and being so liable, the said defendant, in consideration thereof, after-

wards, to-wit, on the 31st day of December, A. D. 1895, aforesaid, undertook and promised to pay to the said plaintiff the said sum of money last mentioned when the defendant should be thereunto afterwards requested."

*Second count*—"And whereas, also, afterwards, to-wit, on the 15th day of October, A. D. 1894, the said plaintiff and the said defendant made and entered into with each other a certain agreement in writing bearing date the day and year last aforesaid, in the words and figures following, to-wit: (Here follows copy of contract *verbatim* as in first count.) And thereupon, in pursuance of and in accordance with said agreement, the said plaintiff did purchase from said defendant said premises No. 492 West Adams street, together with the buildings and improvements thereon, and (subject to the limited interest as partner by him reserved therein) the medical practice and business of said defendant, and the medical practice connected therewith, and the good will thereof, in said agreement mentioned and described, and said plaintiff paid the said defendant therefor the sum of $10,000 in cash, and the said defendant thereupon conveyed to said plaintiff said premises No. 492 West Adams street and delivered the possession thereof to said plaintiff, but said defendant utterly failed and refused, during the term mentioned in said agreement, to make known to his patrons the fact of the partnership formed in and by said agreement, and said defendant during said term utterly failed and refused to introduce plaintiff to them or into their families as a physician and a man worthy of their confidence, and said defendant during said term utterly failed and refused, so far as lay in his power, to establish said plaintiff in said practice, and said defendant during said term utterly failed and refused to send said plaintiff, wherever not objected by the patient of said defendant, to answer calls for said defendant, and that said defendant during said term utterly failed and refused, in good faith, further to do what he could reasonably and prop-

erly to install or establish said plaintiff as the successor of said defendant in said practice. And the plaintiff says that at the time of the making and entering into of said agreement between said plaintiff and said defendant, as aforesaid, the medical practice and business of said defendant, and the medical practice connected therewith, and the good will thereof, (subject to the limited interest by him reserved therein in and by said agreement,) was of the value of the sum of, to-wit, $6000, and the said medical practice was by said plaintiff and defendant at the time of the said agreement estimated to be of the value of, to-wit, $6000, and the same was sold by said defendant and purchased by said plaintiff at said estimated value thereof, and that the said sale thereof was one of the material inducements to said plaintiff to purchase and pay for said premises No. 492 West Adams street, as aforesaid, the fair market value of which there was only the sum of, to-wit, $6000, but that after the sale of said medical practice and business of said defendant, and the medical practice connected therewith, and of the good will thereof, by said defendant to said plaintiff, as aforesaid, the said defendant utterly failed and refused to deliver or turn over said medical practice, business and good will thereof (subject as aforesaid) to said plaintiff, but, on the contrary, said defendant did everything in his power to retain, and thereby did retain, the whole of said medical practice, business and good will thereof for his own use and benefit, and did everything in his power, without any fault of said plaintiff, to prevent, and did prevent, the said plaintiff from deriving any benefit whatsoever from said medical practice, business and good will thereof, and from the sale of the same by said defendant to said plaintiff, as aforesaid, and that by the fault of said defendant, and without any fault on the part of the said plaintiff, he, the said plaintiff, has derived no benefit whatever from the said medical practice, business and good will thereof. By means whereof the said defendant,

under and by virtue of the sale made by and by virtue of his promises, agreements and undertakings in said agreement contained, became liable to pay to said plaintiff the value of said medical practice, business and good will thereof, amounting to the sum of, to-wit, $6000, and being so liable, said defendant, in consideration thereof, afterwards, to-wit, on the 31st day of December, A. D. 1895, aforesaid, undertook and promised to pay to the said plaintiff said last mentioned sum of money when the said defendant should be thereunto afterwards requested."

But a single plea,—the general issue,—was filed. The cause was submitted to and heard by a jury. This is an appeal prosecuted by the plaintiff below, Tichenor, to reverse the judgment of the Appellate Court.

JOHN P. AHRENS, and L. FRANK OTTOFY, for appellant:

The guaranty of appellee in the contract sued on guaranteed a sum certain to appellant without regard to an accounting between the parties as partners. An action at law therefore lies upon the guaranty for that sum certain, as set forth in the first special count of the declaration, and it is not necessary for appellant to go into a court of equity for an accounting to ascertain the amount due appellant under the guaranty. *Wells* v. *Carpenter*, 65 Ill. 447.

The holding of the Appellate Court, in its opinion, that before the appellant's damages for a breach of the agreement by appellee in failing to turn over his medical practice and business, and the good will thereof, could be determined, it would be necessary to go into the partnership accounts in order to ascertain the value of such business and good will, and how much appellant had realized therefrom during the period of the partnership, is erroneous. *Underhill* v. *Goff*, 48 Ill. 198; *Drennan* v. *Bunn*, 124 id. 175.

J. W. Newman, and L. S. Hodges, for appellee:

The contract sued upon is an entire and dependent contract, and appellant should have averred in his declaration, and proved upon the trial, that he had performed all the conditions on his part to be performed, as agreed in said contract, or he should have alleged in his declaration, and proved upon the trial, an excuse for such non-performance, and because he failed to do so the declaration states no cause of action. *Plumb* v. *Taylor*, 27 Ill. App. 238; 1 Chitty's Pl. 321; *Henderson* v. *Wheaton*, 139 Ill. 581; *Taylor* v. *Beck*, 13 id. 376; *Keeler* v. *Clifford*, 165 id. 544; 4 Ency. of Pl. & Pr. 627, 635; *Hungate* v. *Rankin*, 20 Ill. 639; *Railway Co.* v. *Hoyt*, 50 Ill. App. 583; *Eldridge* v. *Roe*, 2 Gilm. 91; *Teal* v. *Walker*, 111 U. S. 242.

When a physician brings a direct action to recover that which he could not be entitled to unless he holds a license, he must affirmatively show that he holds such license. *Chicago* v. *Honey*, 10 Ill. App. 535; *Patrick* v. *Perryman*, 52 id. 514; *Railway Co.* v. *Cotton*, 140 Ill. 486; *Cooper* v. *Griffin*, 40 N. E. Rep. 710.

It was error in law and prejudicial to appellee for the court to permit appellant to testify to conversations between appellant and appellee, prior to the execution of the contract, as to the value of appellee's practice. *Packard* v. *VanSchoick*, 58 Ill. 79; *Longfellow* v. *Moore*, 102 id. 289; *Pickett* v. *Green*, 120 Ind. 554.

The demands sued upon in this action arose out of partnership transactions between appellant and appellee as partners, and there has been no final settlement of the partnership affairs, and it is a case which comes within the rule of law that one partner cannot sue his co-partner in this form of action. 1 Chitty's Pl. 39; 17 Am. & Eng. Ency. of Law, 1254, 1262; 1 Story's Eq. Jur. 681; Dicey on Parties to Actions, 155; Parsons on Partnership, 276, 285, 286; *Martin* v. *Stubbings*, 20 Ill. App. 381; *Berry* v. *DeBruyn*, 77 id. 359; *Bracken* v. *Kennedy*, 3 Scam. 558; *Davenport* v. *Gear*, 2 id. 495; *Chadsey* v. *Harrison*, 11 Ill. 151; *Ridgeway*

v. *Grant*, 17 id. 117; *Johnson* v. *Wilson*, 54 id. 419; *Carter* v. *Bradley*, 58 id. 101; *Burns* v. *Nottingham*, 60 id. 531; *Buck-master* v. *Gowen*, 81 id. 153; *Sindelare* v. *Walker*, 137 id. 43; *Smith* v. *Riddell*, 87 id. 165.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

It is urged the hearing of the issues raised under the pleadings involved an investigation and adjustment of the accounts of the members of the firm, and that for that reason the judgment of the Appellate Court is correct and should be affirmed.   But we do not think an investigation into and determination of the partnership accounts necessary to the determination of such issues or of the issue raised under either of the counts of the declaration. The transaction evidenced by the agreement was the sale by Newman to Tichenor of the West Adams street property and the good will in the general medical practice of said Newman, such real estate and good will being valued in gross at the sum of $12,000.   The formation of a partnership was, as the agreement expressly states, for the purpose of effectually transferring to Tichenor the good will of the business of Newman.   The latter, in express terms, contracted to perform certain acts for the purpose of securing to Tichenor such good will, viz., that he would make known to his patrons the fact of the partnership; to the best of his ability would introduce said Tichenor to them and unto their families as a physician and as a man worthy of their confidence, and so far as should lie in his power would establish him in said practice; that he would send him, wherever not objected to by the patient, to answer calls for him and would personally attend such cases as he might be personally insisted on, and would in good faith further do whatever he reasonably and properly could to install or establish said Tichenor as his successor in said practice.   These promises were to Tichenor and not to the firm.   The benefit to accrue from

their performance would inure to Tichenor individually and not to the firm, and a breach of these undertakings on the part of Newman would result in injury to Tichenor as an individual and not to the proposed firm. An adjustment of the damages resulting from the failure of Newman to observe and perform these things which he had undertaken and contracted to do for the purpose of delivering to Tichenor the good will of the business could not be considered on an accounting in equity of the partnership accounts. ·In *Hanks* v. *Baber*, 53 Ill. 292, we said: "Nor can the parties, on a bill to settle partnership accounts, introduce their individual accounts into the statement. They are not connected with, nor do they in anywise relate to, the business of the partnership. They form a separate and disconnected matter that cannot be included." Authorities supposed to indicate a different rule will, it is believed, be found only to authorize· the interposition of a private indebtedness as an equitable set-off against an amount found due to the co-partner on the completed adjustment in equity of the affairs of a solvent co-partnership,—and this, not upon the ground a private demand of an individual, partner against his co-partner can be considered on an accounting of partnership accounts, but that on the completion of such an accounting it may be considered as an independent equity, and there adjusted in order to avoid multiplicity and circuity of actions. (Consult 17 Am. & Eng. Ency. of Law, p. 1276, and authorities cited in notes.) The judicial determination of the controversy at bar in an action at law does not involve any examination into and adjustment of the partnership accounts, or inquiry as to the profits or losses or expenses of the firm, or the adjustment of any claims arising out of the business transacted by the firm. The reason of the rule that one partner cannot sue another at law except for a balance struck and a promise to pay does not exist here, and the rule has, therefore, no application. Newman contracted to deliver to Tiche-

nor the West Adams street property and the good will
of his business, so far as such good will could be deliv-
ered, and expressly specified certain acts to be performed
by him to effect the transfer of the good will. These ob-
ligations of Newman as to the real estate and the good
will were personal to Tichenor, and their non-perform-
ance vested a right of action in Tichenor,—not in the
firm. Damages for such non-performance, if collected,
would not constitute firm assets, but, if recoverable, be-
long to Tichenor in his individual capacity, hence he may
sue at law for an alleged breach of such undertaking.
The mere fact such acts were to be performed while New-
man was engaged in treating patients as a member of the
firm could have no effect to change the character of his
obligation or to deprive Tichenor of his individual right.

What has been said applies with equal force to the
contract entered into by Newman to guarantee that the
actual earnings and receipts of the co-partnership would
reach a specified sum. Newman was selling to Tichenor
the good will of his business and receiving a considera-
tion therefor. As a part of that contract he undertook
to guarantee the value of such good will for a limited
period. The partnership was formed for the purpose of
enabling Newman to invest Tichenor with the good will
which the former had sold to the latter. They were to
share equally in the earnings and receipts of the firm.
The true construction of the guaranty which is set forth
in the third clause of the contract is, that Newman guar-
antees that one-half of the gross earnings of the firm
(collected, or earned and not collected,) will equal the
amount of $2500 per annum during the time of the exist-
ence of the partnership, and that if one-half of such gross
earnings do not equal said sum he will account to Tiche-
nor for or pay him the deficiency. The guaranty further
provided, such deficiency, if any, should be credited upon
an indebtedness due from Tichenor, as an individual, to
Newman in his individual capacity, if such indebtedness

has not been otherwise paid. The firm had no interest in this guaranty and its adjustment would not properly enter into consideration on the hearing of a bill to wind up the partnership. An investigation as to the right of recovery in an action at law to enforce this guaranty does not involve an examination into the state of the accounts of the partnership or of the relative rights of the partners, each to the other or to the firm. It would be necessary it should be known in such an action the total amount collected, and earned and not collected, by the firm, and for that purpose it would be entirely competent, in an action at law, to receive proof of the amounts collected, and earned and not collected, by each and both of the members of the firm. If one-half the total of such gross receipts and earnings should be found to amount to the sum of $2500 per annum, the guaranty would be fulfilled without regard to the expenses of conducting the business, or which of the partners had earned or which had collected the amounts entering into and constituting such total sum. If one-half of such earnings and receipts did not equal the sum of $2500 per annum, the obligation of Dr. Newman, under his guaranty, would require him to answer to Dr. Tichenor for the deficiency. The undertaking and the guaranty of Dr. Newman set forth in the declaration were in his capacity as an individual and were to Dr. Tichenor as an individual, and are enforceable in an action at law, and may be enforced in that forum without entering into an investigation of the state of accounts between them as partners. The circuit court misconstrued the guaranty to obligate Dr. Newman to guarantee that the net share of Dr. Tichenor in the business of the firm should equal the sum of $2500 per annum. The guaranty has no relation to the expenses of conducting the business, but only to the volume of the business in gross. Our conclusion therefore is, the Appellate Court erred in refusing to remand the case.

There is error in the record which made it necessary the judgment of the circuit court should be reversed. It appeared from the evidence the parties entered into the practice of medicine and surgery as partners, as contemplated by the agreement recited in the declaration, and that such partnership continued for the period of time mentioned in the agreement, and the evidence sufficiently tended to establish the appellee, Newman, failed and refused to comply with the obligations imposed upon him by the second clause of the contract, to make known to his patients and patrons that he and the appellant were partners in the practice of medicine and surgery, or to introduce appellant to said patrons and their families as worthy of confidence as a man and a physician, and otherwise, as required by said agreement, to aid in establishing said appellant as successor of said appellee in said medical practice, and, in general, that appellee failed to do and perform that which he had undertaken to do, as set forth in said second clause of the agreement, for the purpose of effectually transferring to the appellant the good will of the business or medical practice of the appellee. The evidence also further tended to show the "actual earnings and receipts" of the co-partnership during the period aforesaid did not amount to the sum total as guaranteed by the appellee by the provisions of the third clause of the agreement.

On the hearing it appeared the appellant had not executed the note for $2000 mentioned in the agreement and in the guaranty clause. The court refused to allow the appellant, plaintiff below, to introduce proof which, as counsel for plaintiff contended, would show the failure to give said note for $2000 was brought about by acts of the defendant below. The ground of the exclusion of this evidence was a lack of an allegation thereof in the declaration. This ruling was correct. It was incumbent on the appellant to allege in his declaration compliance on his part with the obligations of the contract or to al-

lege facts justifying or excusing such performance. The agreement between the parties was, the appellant should pay a gross sum of $12,000 for the premises (No. 492 West Adams street) and the good will of the business of the appellee, said sum of $12,000 to be paid as follows: $500 in hand, $9500 within twenty days after delivery of an abstract showing good and clear title to the real estate, and the execution of a note, with security as mentioned, for $2000, which note was to be dated and delivered when "the transaction was consummated." The appellee complied with his duty with relation to the delivery of the abstract and deed to the real estate, and "the transaction would be consummated," within the true meaning of those words, by the payment of the sum of $9500 and the execution of the note. The consideration for the undertaking of the appellee to perform the acts agreed upon to be performed for the purpose of securing to the appellant the good will of the business of the appellee was performance by the appellant of his undertaking to pay the money and execute and deliver the note. These undertakings of the parties were not independent, but mutual and dependent, and it was incumbent upon appellant to comply with that which he had undertaken to do (unless non-compliance was excused or justified) before he could be permitted to maintain an action to recover damages for a failure on the part of appellee to comply with the obligations of the contract on his part. (*Hungate* v. *Rankin,* 20 Ill. 639.) We said in *Henderson* v. *Wheaton,* 139 Ill. 581: "The rule is well settled that 'where an act is to be performed by the plaintiff before the accruing of the defendant's liability under his contract, the plaintiff must aver in his declaration, and prove, either his performance of such condition precedent or an offer to perform it, which the defendant rejected; or he may aver his readiness to fulfill the condition until the defendant discharged him from so doing or prevented the execution of the matter which was to be performed by him.' " The

appellant did not seek to amend his declaration, but his counsel admitted to the court and jury the note had not been given and that appellee was entitled to a credit of $2000. The court, over the objection of the appellee, accepted the statement and admission of counsel, and, at the request of appellant, instructed the jury, in substance, to deduct the sum of $2000 from any sum allowed the appellant for his damages because of the alleged breach of the contract by the appellee. In this there is error. Whether the appellant was ready and able to deliver the note, with security, as required, and had been excused from doing so or was justified in failing so to do, were issuable facts, and should have been averred in the declaration in order the appellee might have notice thereof and have opportunity to make defense thereto. The action taken by the court may have been otherwise prejudicial to the appellee in that it was an invasion of the province of the jury. The ruling that the appellant should be permitted to admit the appellee was entitled to a credit of $2000, and the instruction to that effect, were likely to be regarded by the jury as an assumption on the part of the court that the appellant was entitled, under the evidence, to recover a larger amount than $2000.

It was error to permit the appellant to testify to conversations which, as he alleged, occurred between himself and appellee prior to the execution of the contract, as to the value of the practice of appellee. The guaranty incorporated in the written contract measured the liability of the appellee with respect of the value of such medical practice, and all prior statements were merged, as it were, in the writing.

It was not essential to the right of appellant to maintain the action he should affirmatively show he held a license from the State Board of Health authorizing him to practice medicine and surgery in this State. The relation of physician and patient did not exist between the parties, and the action was not for the recovery of the

fees or charges of a physician. The appellant testified he was a graduate of the St. Louis Medical College and had been engaged in the practice of medicine and surgery for a period of about sixteen years. Without deciding any proof at all on the question was required, the proof produced was *prima facie* sufficient and was not controverted. *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486.

The agreement made it incumbent upon the appellant to use his best efforts to promote the interests of the partnership, and the undertaking of Dr. Newman to guarantee that the earnings and receipts of the firm would reach the stipulated amount was based, in part, on compliance on the part of appellant with this agreement. Evidence tending to show that appellant did not use his best efforts to promote the interests of the partnership or that he engaged in the transaction of other business, whereby the earnings and receipts of the firm were injuriously affected, was competent to be considered, but it was not error to refuse to permit the appellee to prove that the name of the appellant appeared in the city directory of 1895 as secretary and treasurer of a corporation. The appellant was not bound by the statements contained in the city directory.

The complaints preferred by the respective parties to the rulings of the court in the matter of granting and refusing instructions are disposed of by what has been hereinbefore said.

The Appellate Court correctly decided the judgment of the circuit court should be reversed, but erred in refusing to remand the cause. The judgment of the Appellate Court and that of the circuit court are each reversed, and the cause will be remanded to the circuit court for further proceedings in conformity with the views herein expressed. Each party will pay the costs by him made in this court.              *Reversed and remanded.*