F. N. ROWE, Appellee, v. L. B. TOON, Appellant.

CONTRACTS: Restraint of Trade, Etc. An agreement by a physician not to practice his profession for ten years in a named county is not legally objectionable, either as to the element of *time* or *territory*, or because of the fact that no *tangible* property is in any wise covered by the contract.

EVIDENCE:   Burden of Proof—Illegality of Contract in Restraint of
2   Trade.   He who claims that an apparently unobjectionable con-
tract in restraint of trade is violative of public policy, by rea-
son of matters *dehors* the contract, must assume the burden to
so show.

PHYSICIANS AND SURGEONS: Effect of Improper Filing of Cer-
3   tificate.   Failure of a duly certified physician to file his certifi-
cate of authority in the office of the county recorder, as provided
by law, does not render unenforcible his contract with another
physician by which the latter agreed to refrain from practicing
his profession in a certain locality and for a stated time.   (See
Sec. 2580, Code, 1897.)

INJUNCTION:   Violation of Contract in Trade Restraint.   Injunc-
4   tion will lie to prevent the breach of an enforcible contract in
restraint of trade.

*Appeal from Crawford District Court.*—M. E. Hutchison,
Judge.

November 23, 1918.

Rehearing Denied March 20, 1919.

Action in equity to enjoin the defendant from pursu-
ing the practice of medicine and surgery in Crawford Coun-
ty, Iowa.   Decree as prayed, and defendant appeals.—*Af-
firmed.*

*L. H. Salinger* and *Clement L. Welch,* for appellant.

*Conner & Powers,* for appellee.

Weaver, J.—For some years prior to the 18th of Sep-
tember, 1912, the defendant, Toon, was engaged in the prac-
tice of medicine and surgery at Dow City, in Crawford
County, Iowa.   In July, 1912, the plaintiff, a young man
who was a graduate of the medical department of the Iowa
State University, and holder of a certificate of due qualifica-
tion from the state board of medical examiners, came to
Dow City, and entered into negotiations with Dr. Toon for
the purchase of the latter's business.   The parties reached

an oral agreement, whereby, in consideration of the sum of $1,000, to be paid by the plaintiff, part down, and remainder in one or more deferred installments, the defendant would relinquish his business to the plaintiff, and retire from practice in Crawford County for a period of ten years. As plaintiff would not be ready to move to Dow City before the following September, it was also agreed that defendant should continue his practice there until plaintiff arrived, · and for a period of thirty days thereafter would remain with plaintiff, introducing him to his patrons, and giving such proper assistance as he could in getting plaintiff started in the practice there. At the time of the oral agreement, plaintiff paid defendant $100, it being understood that a further cash payment was to be made when the plaintiff arrived in September, and the remainder at a later date. Plaintiff reached Dow City early in September; but, finding that another doctor had settled there, he complained to defendant that he was as yet without sufficient introduction to the people of the vicinity, and that his purchase of defendant's business was not likely to give him any proportionate advantage over the other stranger competing for local patronage. For the purpose of strengthening plaintiff's position in this respect, and to enable him, if practicable, to overcome or eliminate the unexpected competition, the parties agreed to enter into a nominal partnership for the period of one year, when defendant was to retire from practice in that county. It was also agreed that plaintiff would pay down the further sum of $200, and give defendant his promissory note for $700, due in one year, which sum, with the $100 paid in July, made up the amount of the original agreed consideration. As witnessing this agreement, the parties signed a contract, prepared and written by the defendant, as follows:

"Dow City, Iowa, September 18, 1912.

"I, L. B. Toon, party of the first, and F. N. Rowe, party

of the second part, enter into an agreement to form a partnership for the practice of medicine and surgery in the town of Dow City and vicinity for the period of one year. This partnership can be terminated sooner by mutual consent. At the expiration of one year, the party of the first part is to retire from the practice of medicine and surgery for the period of ten years in Crawford County. The consideration the party of the second part is to pay the party of the first part $200.00 cash on hand and promissory note for $700.00 payable one year from date. In the event of failure to pay this note the contract is null and void at the expiration of one year from date and the party of the first part can continue the practice of medicine and surgery in the town of Dow City. Either party can have reasonable vacation. They are to pay equally in the livery teams.

"L. B. Toon

"F. N. Rowe."

Plaintiff and defendant continued for a time occupying the same office, and to some extent practicing together, and apparently holding themselves out as partners; but there seems to have been no division of earnings, each collecting and retaining the income derived from patients to whom he was called. In the spring of 1913, and before the year had expired, defendant withdrew from Dow City and settled in Denison in the same county, where he pursued and still pursues the practice of his profession. When the note given by plaintiff was about to fall due, defendant wrote him, giving notice he would expect payment thereof. Plaintiff answered, saying that defendant had not kept his agreement, and that he (plaintiff) did not propose to buy any more "blue sky," pay him for his practice, and "still allow him to remain in the territory and carry on his practice." To this, defendant replied that plaintiff could not expect him to live up to his contract until plaintiff paid the note; that the thing for him (plaintiff) to do was to pay the note,

and he would then be in a position to enforce the contract; and that, when the note was paid, he (defendant) was prepared to leave the territory. Thereupon, plaintiff paid the note in full, since which time defendant has remained in Crawford County, and continues to practice his profession therein. The plaintiff also introduced evidence tending to show that the defendant is insolvent, and that a judgment against him for damages would be uncollectible. The defendant did not testify in his own behalf, nor did he offer any other evidence relating to the negotiations or contract between himself and the plaintiff. On this showing, the trial court found for the plaintiff, as we have already indicated.

Confining our attention to the points argued by the appellant for a reversal, they are as follows:

I. That the contract sued upon is unreasonable and oppressive in its restrictions, in that the area within which the defendant is to be excluded from the practice of medicine bears no just relation either to the practice which the defendant theretofore enjoyed or to the practice which the plaintiff could reasonably expect to acquire or obtain if left free from competition by the defendant.

1. CONTRACTS: restraint of trade, etc.

That equity will refuse its aid to enforce a clearly unreasonable or oppressive contract of this nature may be admitted, but there is nothing upon the face of this particular agreement indicating that it is unreasonable or inequitable in any respect. It excludes the defendant from practice in Crawford County only. All the rest of the wide world is open to him. And even in Crawford County, the period of exclusion is limited to ten years. We cannot say, as a matter of law, that the restriction, either as to territory or to time, is unreasonable. It is not an unheard-of or very unusual thing for a well-established physician, of good repute, to enjoy a practice co-extensive with his coun-

ty; and even a young physician, whose present practice is comparatively limited, both in the number of his patients and in the area in which he finds his patrons, may yet reasonably hope, if well qualified, to extend his practice much beyond the immediate vicinity of his office or home. The

2. EVIDENCE: burden of proof: illegality of contract in restraint of trade.

contract sued upon not being unreasonable on its face, plaintiff was not required to negative the existence of possible conditions rendering it void or voidable. Defendant offered no testimony tending to show that the restraint provided for by his own voluntary agreement was materially greater than was necessary for the protection of the plaintiff in the enjoyment of the fruits of his contract, and the argument that such agreement operates oppressively, or in a manner to offend against public policy, finds no support in a fair and candid reading of the terms agreed upon and reduced to writing by the defendant himself, or in the nature or effect of the prior negotiations leading up to it. This conclusion has the support of the great weight of authority, as indicated by the precedents to which we shall soon refer.

But counsel say that, while there is a class of contracts by which the seller of a business may validly agree to reasonable restrictions against his re-entry into the same business in competition with his purchaser, yet such rule is not available to defendant in this case, because the defendant's agreement not to continue practice in Crawford County "is not incident or ancillary to any other contract of lawful purchase and sale," but is "no more than a bald agreement to pay a man not to practice his profession or exercise his trade." If we understand this somewhat cryptic statement, it is to the effect that a valid contract to refrain from a lawful business or occupation, even for a limited time or in a limited territory, can be made only where it is entered into as incident to or a condition of the sale of something

more substantial and tangible than the sale by a physician of his professional practice. The inference would seem to be that, unless the seller is disposing of some tangible property, like an office, or residence, or stock of instruments, medicines, or supplies, used by him in and about his business, there is nothing to support the so-called ancillary agreement to retire from his practice in that neighborhood. The position so taken cannot be successfully maintained. It is true, it is a generally recognized rule that a mere agreement to retire and refrain from a given business, and no more, is of no validity, and to sustain such a contract, it must appear that the agreement was made in support of some other agreement,—ordinarily, a sale or transfer of something which the law recognizes as property or property rights, which may be lawfully bought and sold. The purpose of such auxiliary agreement is the protection of the purchaser in the benefit of his contract against competition by the seller; and in many instances, this protection is a matter of prime importance, without which the purchaser would not think for a moment of investing any money in the purchase of a business. That such protection for the purchaser of a professional practice may be lawfully contracted for is thoroughly well settled. *Holbrook v. Waters,* 9 How. Pr. (N. Y.) 335; *Doty v. Martin,* 32 Mich. 462; *Pickett v. Green,* 120 Ind. 584; *Gilman v. Dwight,* 79 Mass. 359; *Cole v. Edwards,* 93 Iowa 477; *Smalley v. Greene,* 52 Iowa 241; *Bunn v. Guy,* 4 East 386; *Timmerman v. Dever,* 52 Mich. 34; *Cook v. Johnson,* 47 Conn. 175; *Dwight v. Hamilton,* 113 Mass. 175, 177; *Brett v. Ebel,* 29 App. Div. 256 (51 N. Y. Supp. 573); *Gordon v. Mansfield,* 84 Mo. App. 367; *Wolff v. Hirschfeld,* 23 Tex. Civ. App. 670 (57 S. W. 572); *Hoyt v. Holly,* 39 Conn. 326; *Ryan v. Hamilton,* 205 Ill. 191 (68 N. E. 781); *Tichenor v. Newman,* 186 Ill. 264 (57 N. E. 826); *Hauser v. Harding,* 126 N. C. 295 (35 S. E. 586). A business or professional good will may be the sub-

ject of lawful sale, even when unaccompanied by the trans-
fer of any so-called business plant or other tangible prop-
erty. *Brett v. Ebel,* 29 App. Div. 256 (51 N. Y. Supp. 573).
Such, also, is the effect of our own holding in *Roush v. Ges-
man Bros. & Grant,* 126 Iowa 493, where it is said, in sub-
stance, that, while one doing business as a real estate agent
cannot, as incident to a sale of such business, transfer to
the purchaser his authority as an agent, or vest him with
the right to act for the seller's principals or patrons, he can,
by selling his business and retiring therefrom, grant to the
purchaser an opportunity to obtain such patronage without
the handicap of his competition. This, we said, is a valu-
able right, which the seller can lawfully transfer, and is
one which the courts will protect and enforce. It is too
clear for argument that a person having an established
practice as a lawyer or physician may sell his business, and,
by binding himself to refrain from all competition with his
purchaser for a reasonable time, and within reasonable ter-
ritorial limits, he can vest his purchaser with a valuable
opportunity; and that such an agreement is not to be con-
demned or avoided, as without consideration or as being
forbidden by any sound principle of public policy. True,
the lawyer cannot (in this way) sell his clients, or the doc-
tor sell his patients or their individual patronage or their
individual good will; yet he can, by such sale and by an
honest observation of his covenant not to embarrass his
purchaser by competition, confer upon him a real advan-
tage, and hasten the acquisition of business by him on his
own account; and the courts should be slow to establish
any rule or precedent by which any person can make a pre-
tense of such sale, and, having received the stipulated price
therefor, immediately repudiate its obligation, and take from
his purchaser the sole and only consideration upon which
he parted with his money.

II. It is said in argument that, upon the plaintiff's

own testimony, the transaction was not the purchase of the defendant's business or of its good will, but a mere agreement by the defendant to leave Crawford County; and that such an agreement is clearly void. The plaintiff does state that defendant was to leave the county, or promised to leave, and that he paid the money, or agreed to pay it, in consideration of such promise, or words to that effect. It is perfectly manifest, however, when one reads all of plaintiff's testimony, in the light of the undisputed facts, that, while defendant did say that he would leave the county, it was only another form of expression for his promised withdrawal from the practice of his profession in the county; and it is with this thought only that plaintiff makes use of the language on which counsel seek to defeat his claim to relief. Had defendant remained in the county and withdrawn from practice therein, as he agreed to do, plaintiff would have had no ground for complaint, and we may safely assume that this action would not have been brought. *Haldeman v. Simonton*, 55 Iowa 144.

The further point is made that the contract between the parties and the payment of money was in pursuance of an unlawful conspiracy in restraint of trade. This argument is based upon plaintiff's testimony that, when he returned to Dow City to complete the deal with defendant, and found that another physician had settled there, the agreement made in July previous was modified, or rather, was supplemented, by the agreement for a nominal partnership and for defendant to remain at Dow City a while longer, to introduce the plaintiff to the people and aid him in getting started, hoping thereby to head off competition by the new practitioner, and perhaps to induce him to abandon the field. What the result was in this respect does not appear, nor is it material. The partnership, whatever its character or extent, was abandoned before the year was out, and defendant removed to Denison. There is nothing

in the agreement of an unlawful character. There was no undertaking to interfere in any manner with the business or practice of the physician referred to, or to reflect upon his character or standing or professional capacity. Plaintiff's agreement to pay the $1,000 had been made two months before the incident above mentioned, and the writing made in September was no more than the consummation of that agreement, with the added arrangement for a form of temporary partnership. It affords no ground for defense against the plaintiff's demand for a performance of the contract.

III. While the trial was in progress in the district court, it incidentally appeared that, although plaintiff had been duly admitted to the practice of medicine, and held a proper certificate of his authority to practice from the Iowa Board of Medical Examiners, he had mistakenly filed the same for record with the clerk of the court for Crawford County, instead of with the recorder of the county, as the statute directs. And, somewhat singularly, it further appeared that the defendant had also made the same mistake, and that his certificate of authority to practice was filed in the clerk's office, and not in the recorder's office. Upon this discovery, the plaintiff at once filed his certificate in the proper place. Thereupon, the defendant amended his answer, by alleging that plaintiff had never complied with the statutes of the state regulating the practice of medicine, and that because thereof, the court should deny him any relief in the premises.

3. PHYSICIANS AND SURGEONS: effect of improper filing of certificate.

We think there is no merit in this defense. The plaintiff was concededly a duly qualified physician and surgeon. He held the proper certificate which conferred upon him "the right to practice medicine and surgery," and was conclusive evidence of such right. Code Section 2576. It is true that, by another section (Code Section 2580), it is

made the duty of the practitioner to file his certificate for record with the county recorder; and by failing so to do, he becomes chargeable with a technical misdemeanor in entering upon the practice, even though he acted in good faith in making his filing with the clerk; and it is true, also, that for his professional services while the record was in that condition, he could not have enforced collection of fees or compensation by legal proceedings. *Lynch v. Kathmann,* 180 Iowa 607. All this may be admitted, without leading to the conclusion for which appellant contends. At the time when the contract was made, and when the money was paid and when this action was begun, plaintiff, as we have before said, was a duly admitted and duly certified practitioner of medicine. If his certificate had not been filed of record in the proper office, he was entitled to file the same forthwith, and enter upon the practice; and we are not prepared to say that, if otherwise qualified to practice, the mere fact that his certificate had not been recorded in the county would be sufficient ground for denying him relief in this action. Let us, for illustration, suppose plaintiff to have been a newly admitted and properly certified physician, who came to Dow City in search of a location, and had entered into a contract for the purchase of the business of the defendant, and, in consideration thereof, and of defendant's agreement to forthwith withdraw from practice, plaintiff paid him $1,000 in money. Let us further suppose that plaintiff's certificate had not yet been filed for record anywhere, and he was withholding it from record until he had secured a suitable location. Now if, immediately upon getting plaintiff's money in his pocket, defendant had announced his repudiation of all obligation to comply with his agreement, and his purpose to continue in practice, would it have been incumbent upon plaintiff to first file his certificate for record, before he could properly begin and maintain a suit to enjoin defendant's breach of the con-

tract?  We cannot so hold.  It has been held, in a not very
dissimilar case, that, to make a prima-facie case in such an
action, it is not even necessary for plaintiff to show his pos-
session of a license or certificate from the state board of
examiners.   *Tichenor v. Newman,* 186 Ill. 264 (57 N. E.
826).  In the present case, plaintiff did show his admission
to practice and a proper certificate from the board of ex-
aminers, and this was not only undisputed, but is admitted
of record.  The controversy is not between physician and
patient, and the question of recovery of fees for professional
services is not involved.  The contract sued upon did not
contemplate any illegal act on the part of either party.  De-
fendant had the legal right, as we have already shown, to
sell his practice, and plaintiff had the legal right to buy it.
Having sold his practice, and received his pay for it, it does
not lie in the defendant's mouth to declare his contract
void, because plaintiff, in entering upon the practice so pur-
chased, mistakenly filed his certificate in the wrong office.
It may be that, by such mistake, though committed with-
out conscious wrong, plaintiff technically became charge-
able with a misdemeanor, and rendered himself unable to
enforce by law the collection of fees earned before the mis-
take was corrected; but from the outset, he possessed the
right to correct the filing.  It is not necessary to consider or
decide whether such delayed filing would, for any purpose,
be considered as *nunc pro tunc;* it is enough to say that
no principle of law or equity clothes the man who sold the
practice with the right to violate his contract, and be im-
mune against an action thereon because of such omission.
The same court which, as between the state and plaintiff,
might assess the latter with a penalty for his mistake, will,
as between him and the defendant, protect him in his right
to correct the mistake.

IV.  Counsel for defense declare their "earnest belief
that the time will come when the mere fact that the subject

of any such bargain as this case exhibits is one of the pro-
fessions, will vitiate it;" and their argu-

4. INJUNCTION: ment, in large part, consists of an ingenious
violation of
contract in     attempt, not alone to sustain the defense in
trade restraint.
this case, but to undermine and discredit
the principle on which the doctrine of the precedents is
based. This is a field of academic discussion upon which
we do not care to enter. It is enough to say that, while
there has been some apparent divergence, and perhaps some
inconsistencies in the practical application of the rule to
particular cases, there is no substantial conflict anywhere
upon the proposition that a professional practice is a lawful
subject of sale, and that equity will protect the purchaser
against the competition of a seller who has contracted to
surrender the good will of his business to the buyer. There
is nothing inherently vicious in the rule, and we are content
to abide by it.

In closing, it is proper to notice counsel's appeal to
the court to uphold the high ethical standards of the medi-
cal profession by denying the plaintiff's prayer for relief.
Touching this subject, they say:

"It cannot be the policy of the state to encourage or per-
mit violations of the ethics of the profession, as agreed up-
on generally by the profession. It is surely the policy of
the state to discourage—if not to forbid—practices which
tend to lower the standards and traditions of the profes-
sion."

This proposition of counsel's has our complete and cor-
dial acquiescence; and, so far as this case is concerned,
there is no better or more appropriate way to emphasize
our concurrence in the principle they contend for than to
compel their client to uphold the standards and traditions
of his profession by exhibiting common honesty in the per-
formance of his contracts. The record shows, as we have
seen, that the appellant voluntarily entered into the con-

tract to sell his business and to refrain from further prac-
tice in the county, and that, in consideration of that agree-
ment, he demanded and received $1,000.  It further appears
without dispute,—indeed, he admits of record,—that he has
never ceased his practice in the county, and that, while he
has removed to another town, he still returns to Dow City
for the treatment of patients.  For this open and flagrant
violation of his contract he offers no explanation or excuse.
nor does he return or offer to return the money paid him,
but asks the court to permit him to escape with it, on the
theory that his agreement was stamped with illegality to
such a degree that plaintiff ought not to have any relief.
There may be cases in which such a plea is sustainable, but
this is not one of that happily infrequent kind.

The decree is clearly right, and it is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.